JOHN Y. FERRY *et al.* v. S. C. CAMPBELL, Executor, etc., and JOHN HERRIOTT, Treasurer of State, Appellant.

**Constitutional Law:** INHERITANCE TAX. Acts Twenty-sixth General Assembly, chapter 28, section 1, subjects all property within the state passing by will or inheritance, except in certain specified cases, to a tax of 5 per cent. of its value above $1,000, and declares that all administrators, etc., shall be liable for such tax, which is declared a lien upon the decedent's estate until paid. Section 3 provides that real estate subject to such tax shall be appraised after the appointment of an executor or administrator, and the tax, calculated on the appraised value, shall be paid by the person entitled to the estate; and authorizes a sale thereof if the tax is not paid. *Held* that, since property passing by will or inheritance vests immediately in the heir or legatee on the death of the owner, such act was unconstitutional, as depriving the devisee of his property without due process of law, in that it authorized the fixing of the appraisement for such taxation without notice or opportunity for him to be heard.

STATUTE PARTIALLY VOID: *Re-enactment.* Where a statute providing for inheritance taxation was unconstitutional for failure to provide for notice or hearing of the appraisement of the property to be taxed, it was not necessary that the entire statute be reenacted on passage of an amendment curing such defect.

**Retroactive Laws:** PENDING LITIGATION: *Curative acts.* A judgment restraining the collection of an inheritance tax, imposed by Acts Twenty-sixth General Assembly, chapter 28, on the ground that such act was unconstitutional, is not a contract within the constitutional provision prohibiting the passage of any law impairing the obligation of contracts; and hence such judgment might be properly reversed on appeal, where, pending such appeal, the legislature passed a retroactive law curing the defects in the prior act.

SAME. Where, pending appeal from an order overruling a demurrer to a complaint, based on the contention that the statute on which the cause of action was based was unconstitutional, the legislature removed the defect by the passage of an amendment, the fact that the case was heard on demurrer, and presented to the supreme court on an assignment of errors, did not prevent the appellate court from deciding the appeal under the law as amended.

EFFECT ON PROPERTY: *Estates in distribution.* Where, pending appeal on an action to restrain the collection of an inheritance tax, imposed by Acts Twenty-sixth General Assembly, chapter 28, which was unconstitutional for failure to provide for notice of the assessment of the property to be taxed, the legislature by Acts Twenty-seventh General Assembly, chapter 37, cured the defects in the prior act, and by section 2, of the amendatory act provided that it should be retroactive, personal property in the hands of an executor, undistributed at the time such amendment took effect, was liable to the tax.

*Appeal from Pottawattamie District Court.*—HON. A. B. THORNELL, Judge.

MONDAY, JANUARY 22, 1900.

SUIT in equity to enjoin defendants from collecting an inheritance tax upon the property of the estate of Frank C. Stewart on the ground that chapter 28 of the Acts of the Twenty-sixth General Assembly, and the re-enactment thereof in the Code of 1897, are in contravention of the fourteenth amendment to the constitution of the United States and of section 9, article 1, of the constitution of this state. Defendants demurred to the petition, but their demurrer was overruled, and decree was entered for plaintiffs as prayed. Defendants appeal.—*Reversed.*

*Milton Remley,* Attorney General, and *C. G. Saunders* for appellants.

*Frank Shinn* and *Stone & Tinley* for appellees.

DEEMER, J.—The first section of the act in question reads as follows: "All property within the jurisdiction of this state, and any interest therein, whether belonging to

the inhabitants of this state or not, and whether tangible or intangible, which shall pass by will or by the statutes of inheritance of this or any other state, or by deed, grant, sale or gift, made or intended to take effect in possession or in enjoyment after the death of the grantor or donor, to any person in trust or otherwise, other than to or for the use of the father, mother, husband, wife, lineal descendant, adopted child, the lineal descendant of an adopted child of a decedent, or to or for charitable, educational or religious societies or institutions within this state, shall be subject to a tax of five per centum of its value, above the sum of one thousand dollars, after the payment of all debts, for the use of the state; and all administrators, executors, and trustees, and any such grantee, under a conveyance, and any such donee under a gift, made during the grantor's or donor's life, shall be respectively liable for all such taxes to be paid by them, respectively, except as herein otherwise provided, with lawful interest, as hereinafter set forth, until the same shall have been paid. The tax aforesaid shall be and remain a lien on such estate from the death of the decedent until paid." Acts Twenty-sixth General Assembly, chapter 28. This is followed by provisions requiring the executor to make and file a separate inventory of the real estate subject to the tax, an appraisement of said real estate by appraisers approved by the clerk, the filing of the appraisement, and providing the manner of estimating the tax to be paid on the property. Section 3 of that act provides, in substance, that the real estate of the deceased subject to the tax shall be appraised within thirty days next after the appointment of the executor, and that the tax thereon, calculated on the appraised value, shall be paid within fifteen months after the approval of the appraisement. The appraisement made of the personal property by the regularly appointed appraisers seems to be made the basis for levy of the

tax on that kind of property. No notice to the heirs, lega-
tees, or devisees is provided for or required. For this reason
it is said that the act is unconstitutional, because amounting
to a deprivation of property without due process of law.
What is due process of law within the meaning of the federal
and state constitutions is not clearly defined." As said by
Justice Miller in *Davidson v. Board,* 96 U. S. 97 (24 L. Ed.
616: "If, therefore, it were possible to define what it is
for a state to deprive a person of life, liberty, or property
without due process of law in terms which would cover
every exercise of power thus forbidden to the state and
exclude those which are not, no more useful construction
could be furnished by this or any other court to any part
of the fundamental law. But, apart from the imminent
risk of a failure to give any definition which would be at
once perspicuous, comprehensive, and satisfactory, there is
wisdom, we think, in the ascertaining of the intent and
application of such an important phrase in the federal con-
stitution by the gradual process of judicial inclusion and
exclusion, as the cases presented for decision shall require,
with the reasoning on which such decisions may be
founded." Mr. Webster's definition in the *Dartmouth Col-
lege Case* has been more generally followed than any other.
Among other things, he said: "It was a law which hears
before it condemns; which proceeds upon inquiry, and ren-
ders judgment only after trial. The meaning is that every
citizen shall hold his life, liberty, property, and immunities
under the protection of the general rules which govern
society. Everything which may pass under the form of an
enactment is not, therefore, to be considered the law of the
land." As a general rule, confiscation of property without
a judicial hearing after due notice is not due process of
law. There are, of course, exceptions,—as for instance,
where it becomes necessary to destroy private property to
prevent the spread of fire or pestilence in a city, or the
advance of an army,—but these exceptions are due to over-

ruling necessity. In *Gatch v. City of Des Moines,* 63 Iowa, 718, these questions were very fully considered, and it was there held that the legislature could no more impose an assessment for which property may be taken and sold than it can render a judgment against a person without hearing; that notice of proceedings in such cases, and an opportunity for a hearing of some description were matters of constitutinal right, and that a special assessment for the cost of improving streets could not lawfully be imposed upon abutting property without notice to the owner, and an opportunity to be heard in opposition thereto. In that case certain exceptions were noted as follows: "It is true that there are some species of property to which the rule is not applicable. They may embrace a poll tax, a license tax, a tax upon occupations, and the like, where the tax is specific, and operates upon all alike. Taxes of these and like kinds are plainly exceptions to the rule, because a hearing would be of no possible avail. In such cases the law fixes the amount, and there is nothing left to inquire into and determine." The attorney general frankly concedes that, if the tax in question is a property tax, the demurrer was properly sustained, because of the fact that neither the statute nor the rules of court at that time provided for notice. But he insists that the tax is upon the right of succession; is a succession tax in fact; that the state has the right to impose such taxes as a condition upon the privilege of inheritance, and that no notice of the appraisement is required. Such taxes as are imposed by the act under consideration have been almost universally denominated succession taxes, and they have been upheld on the theory that the right to succeed to property upon the death of the owner is the creation of law, and that the state, which creates this right, may regulate it; that is, it may say how and to what extent the succession may go, may impose conditions and burdens thereon, and may, to a certain extent, fix the situs of property for the purpose of taxation. See *Clymer v. Com.* 52

Pa. St. 187; *Strode v. Com.* 52 Pa. St. 181; *In re Swift*
137 N. Y. 77 (32 N. E. Rep. 1096, 18 L. R. A. 709);
*Miller's Ex'r v. Com.* 27 Grat. 117; *Magoun v. Bank,* 170
U. S. 283 (18 Sup. Ct. Rep. 594, 42 L. Ed. 1037). The
history of such taxes is a most interesting study, but is
entirely too long to be considered in this opinion. See, as
bearing on the question, *State v. Alston,* 94 Tenn. Sup. 674
(30 S. W. Rep. 750, 28, L. R. A. 178); Dowell, History
Taxation England, 148; *Review of Reviews,* February,
1893. Wills, and therefore testaments, and rights of inheri-
tance and succession, are, as Blackstone says, "all of them
creatures of the civil or municipal law, and accordingly are
in all respects regulated by them." This is elemental
doctrine, and it is no doubt true that there is nothing in
our fundamental law to prevent the legislature from taking
away or limiting the right of testamentary disposition or
of inheritance, or imposing such conditions on its exercise
as it may deem best for the public good. See *U. S. v. Per-
kins,* 163 U S. 625 (16 Sup. Ct. Rep. 1073, 41 L. Ed.
287); *U. S. v. Fox,* 94 U. S. 315 (24 L. Ed. 192); *Mager
v. Grima,* 8 How. 400 (12 L. Ed. 1168); *Eyre v. Jacob,*
14 Grat. 427.

These well-settled propositions do not, as we view it,
settle the question raised by the demurrer. The statute says
that "all the property within the jurisdiction of the state
which shall pass by will or by the statutes of inheritance of
this or any other state   *   *   *   shall be subject
to a tax of five per centum of its value  *  *  *  for
the use of the state  *  *  *  and all administrators,
executors," etc., "shall be liable for all such taxes
to be paid by them,  *  *  *  and the tax aforesaid shall
be and remain a lien on such estate from the death of the
decedent until paid." Section 3 of the act provides that
all real estate subject to the tax shall be appraised within
thirty days after the appointment of the executor, and the
tax calculated thereon upon the appraised value shall be

paid by the person entitled to said estate, and in default
thereof the court shall order the same, or so much thereof
as may be necessary to pay the tax, to be sold. It will thus
be seen that the right of testamentary disposition or of inher-
itance as it had theretofore existed is recognized
by this statute. The property passes to the heir, devisee,
or legatee, just as it did prior to the enactment of this law;
but a lien is imposed upon it under certain conditions, in
virtue of the right of the state to tax successions, and the
amount of the lien or tax is to be determined by an appraise-
ment of the property. If the statute provided that there-
after certain persons should not be permitted to take by will
under the statute, except on condition that they pay a tax
fixed by an appraisement of the property, there would be
more reason for saying that such a tax, being strictly upon
the right of succession, and not upon property in which the
heir or legatee had an interest, might be levied and collected
without notice to the parties in interest. But such is not
the case. The property, whether disposed of by will
or descending under the statute of the state, became
the property of the devisee, legatee, or heir imme-
diately upon the death of the testator or ancestor; and the
measure of liability for the tax is fixed by an appraisement
of the property, made after the testator's death. Sustaining
the proposition that an heir has a vested interest in the prop-
erty of his ancestor upon the death of such ancestor, see
*Weaver's Estate v. State,* 110 Iowa, 328, and *Moore v. Gor-
don,* 24 Iowa, 158. The collateral inheritance tax statute.
imposes a burden upon this interest which is fixed and
determined by an appraisement of the property, and no pro-
vision for notice to the heir or legatee, or for opportunity
to be heard, is made. Call this tax what you will, it is evi-
dent that it deprives or may deprive a citizen of his property
without notice and opportunity to be heard. Doubtless it is
not a property tax in the strict sense of that term, but the
amount is not fixed and certain, as it is where a specific

license or occupation tax is imposed. In such cases, as said in the *Gatch Case,* there is nothing left to inquire into and determine. Special assessments for improvements ·are· not, strictly speaking, taxes, but it is held that notice· of ·proceedings in such cases, and opportunity for a hearing of some description, are matters of constitutional right. As said by Judge Cooley in his work on Taxation, at · pages 255, 256: "It is not to be presumed that constitutional provisions carefully framed for the protection of property·were intended or could be construed to sanction ·legislation under ·which officers might strictly assess one for any amount in their discretion without giving an opportunity to contest the justice of the assessment. When the assessment is· based upon ·value or benefits, whether it be a tax on property or succession tax, and that value is ·to be ascertained by appraisement, assessors, or other tribunal which involves inquiry, notice and an opportunity for hearing are essential to the validity of the proceedings." *Hagar v. Reclamation Dist.* 111 U. S. 701 (4 Sup. Ct. Rep. 663, 28 L. Ed. 569·); *Stuart v. Palmer,* 74 N. Y. 183. The succession tax of the state of New York provides for notice to parties interested, and *In Re McPherson;* 104 N. Y. 321 (58 Am. Rep. 502, 10 N. E. Rep. 685), the supreme court of that state said: "This tax is imposed according to the value of the legacy and collateral inheritance liable to be taxed, and hence there must· be some method of ascertaining that value; and for that purpose judicial action is requisite at some stage of the proceedings before the liability of the taxpayer becomes finally fixed. He must have some kind of notice of the proceedings against him, and a hearing, or an opportunity to be heard, in reference to the value of his property and the amount of the tax which is thus to be imposed. Unless he has this, his constitutional right to due process of law has been invaded,"—citing cases heretofore referred to.

The attorney general contends, however, that the tax is simply a claim against the estate, and that no notice of the

filing or hearing of such claims is required to be given to
the heirs or legatees. The difficulty with this proposition is
that the claim is not against the estate; surely not against
the estate alone. Indeed, it may never pass through the
hands of an administrator, for, as a rule, the administrator
has nothing to do with the real estate. A large part of the
Stewart estate was real estate situated in Pottawattamie
county. The tax was made a lien on this real estate, and
under the provision of the act in question the devisee was
authorized to pay the tax directly to the state treasurer, and
the treasurer was authorized to collect the same by suit.
Again, it is said that by the provisions of section 15 of the
act the district court has jurisdiction to hear and deter-
mine all questions relating to said tax that may arise affect-
ing any devise, legacy, or inheritance, subject to appeal, as
in other cases, etc., and that this affords such hearing as
avoids the constitutional objection. We do not think this is
true. The proceedings referred to in this section are such
as may arise upon appearance of the parties. The tax is
fixed by the appraisement, of which no notice is required;
and the section itself does not contemplate notice. It merely
gives the court jurisdiction to hear certain contests that may
arise relating to the tax, and affecting any device, legacy,
or inheritance. Without this provision it is no doubt, true
that the district court would have jurisdiction to determine
any question relating to the tax that was properly brought
before it, and the statute simply gives that court, acting as
a court of probate, jurisdiction of the matter. It in no
manner cures the constitutional objection. We are abid-
ingly convinced that the Acts of the Twenty-sixth General
Assembly are, for the reason stated, contrary to the pro-
visions of both the federal and state constitutions.

II. The Twenty-seventh General Assembly passed an
act known as "chapter 37, Amendatory Act," providing for
notice to all parties interested of the appraisement of the
property. It is argued by the attorney general that this

cured the defect in the law, and that, as the case is triable
*de novo* in this court, we have power-to modify the decree
entered by the district court, and hold the property
subject to the tax.  By section 2 of that act the law
was made retroactive, and it is claimed that the
decree should be reversed in view of this subsequent legisla-
tion.  A succession tax may be imposed on property not yet
distributed.  *Carpenter v. Pennsylvania*, 17 How. 456,
(15 L. Ed. 127); Cooley Taxation (2d ed.), 376.  And, if
the original act was cured by the amendatory act, we see
no reason why it should not be made to apply to estates
undistributed at the time the amendatory act went into
effect.  The original act imposed a tax upon the property of
the testator, and declared that it should be a lien on the
estate from the death of the decedent until paid.  The rate
per cent is also fixed, and appraisement was necessary sim-
ply to fix the value of the property in order that the tax
might be computed.  There is no valid objection to the levy
of such a tax; that is to say, it is not an illegal or unauthor-
ized tax.  It is invalid simply because the legislature did
not provide for notice of the proceedings by which the
amount of the tax was to be ascertained.  That the legisla-
ture may cure such defects is fundamental.  See *Iowa Land
Co. v. Soper*, 39 Iowa, 112; *Association v. Heidt*, 107 Iowa,
297 (43 L. R. A. 689); *Huff v. Cook*, 44 Iowa, 639; *Rich-
man v. Supervisors*, 77 Iowa, 513 (4 L. R. A. 445); *Tuttle
v. Polk*, 84 Iowa, 12; *City of Clinton v. Walliker*, 98 Iowa,
655.  Appellees' counsel say, however, that the estate vested
on the death of the testator, and that any charge made
thereon by the legislature after his death is unconstitutional
and void.  As to real estate this is true, perhaps, although
it is best that we do not decide the point on the arguments
before us.  As to the personal estate the rule seems to be
different, however.  While the distributive share is a vested
interest,—that is, vests in point of right at the time of the
death of the intestate,—yet the persons who take and the

amount to be received must be ascertained and determined by the probate court. So long as the estate remains unsettled, the legislature may cure any defects in the law creating a lien thereon, and the act may be made retroactive. The cases heretofore cited so firmly settle this principle that we need do more than refer to them. A re-enactment of the whole statute was unnecessary. The amendatory act simply removed an impediment to the enforcement of the tax, and, when that impediment was removed, the original act was effectual, and capable of enforcement by proceedings had under the new act. *Blair v Ostrander*, 109 Iowa, 204.

Again, it is said that a judgment is a contract, and that the obligation thereof can no more be disturbed by subsequent legislation than the obligation of a mutual agreement. A judgment is not of itself a contract in a constitutional sense. If it be based on contract, the obligation thereof cannot be impaired by subsequent legislation, but if upon tort or other cause of action not entitled to protection as a contract, then the judgment may be impaired without violating the constitutional inhibition. *Sprott v. Reid*, 3 G. Greene, 489; *Garrison v. City of New York*, 21 Wall. 196 (22 L. Ed. 612); *Freeland v. Williams*, 131 U. S. 405 (9 Sup. Ct. Rep. 763, 33 L. Ed. 193); *Louisiana v. Mayor, etc., of City of New Orleans*, 109 U. S. 285 (3 Sup. Ct. Rep. 211, 27 L. Ed. 936). Moreover, while the judgment in this case was conclusive and binding between the parties from the time it was rendered, if not superseded as provided by law, yet, in view of the appeal, it was subject to modification or reversal so long as this court had jurisdiction of the case. Surely, this court is not estopped by any constitutional provision from rendering any judgment it may see fit on appeal, and we may, in so doing, especially in equity cases, consider the law as it exists at the time we are called upon to act. This is elementary law, sustained by some of the authorities already

cited. While it is true that the original act was unconstitutional because it did not provide for notice, that defect has now been cured, and we must decide the case on appeal in the light of the law as it now exists. That the case was heard in the trial court on demurrer, and was presented to us on assignment of error, does not qualify this rule. The facts are admitted, and it is simply a question of law to be determined by this court on the agreed statement of the facts. The *Iowa Land Company Case* was tried on demurrer, and yet the decision was rendered under the law as it existed at the time the case was heard in this court. No new fact is introduced. We are constrained to hold that, in view of the subsequent legislation, the judgment of the trial court should be reversed, and the cause remanded for further proceedings in harmony with this opinion. But it should not be understood from this holding that any of the property is subject to the tax. That question must be determined from the facts as shown upon a trial on the merits. It may be that no tax can be collected from the real estate. On that point we express no opinion. And it may further appear that the personal estate was distributed, in whole or in part, at the time the amendatory act was passed, and that no tax should be imposed on the personal property. That question is left open for further consideration. The parties will each pay one-half the costs of this appeal.—REVERSED.

GRANGER, C. J., not sitting.