JOHN HERRIOTT, Treasurer of the State of Iowa, Appellant, v. L. F. POTTER, Administrator, *et al.*

**Descent of Real Property:** INHERITANCE TAX: *Statutes.* Where the owner of land dies intestate after enactment of Acts Twenty-sixth General Assembly, chapter 28, requiring the payment of an inheritance tax, which was unconstitutional, and before the adoption of the amendment thereto (Acts Twenty-seventh General Assembly, chapter 37), curing the error therein, the succession to such land was not subject to the inheritance tax, since under Code, section 3378 *et seq.*, the title and right of disposition and possession passed to the heirs immediately on the owner's death and before the inheritance tax law became effective by amendment.

*Appeal from Pottawattamie District Court.*—HON. WALTER I. SMITH, Judge.

MONDAY, FEBRUARY 10, 1902.

ACTION for the collection of collateral inheritance tax. Petition dismissed, and plaintiff appeals.—*Affirmed.*

*Chas. W. Mullan,* Attorney General, and *Chas. A. Van Vleck,* Assistant Attorney General, for appellant.

*Saunders & Stuart* for appellees.

LADD, C. J.—John Lawson died intestate September 7, 1896, seised of 280 acres of land in Pottawattamie county. The defendant was duly appointed administrator of the estate November 11, 1896, and then being without knowledge of the heirs, took possession of the real estate. In the spring of 1897 he ascertained that one sister, a minor, resided in Sweden, where she still remains, and that two others lived in the northern part of Minnesota. He immediately notified them of the death of their brother, and of their interest in the estate. The last two were in Pottawattamie county at the time of the trial, and able to take charge of the land; but the same was, under the direction of the court, retained by the administrator, with the view of collecting therefrom rents and profits sufficient to meet the expenses of administration. No personal property then passed to these collateral heirs, and we have only to determine the liability for the inheritance tax on the succession to the real estate.

It will be noted that Lawson died after chapter 28 of the Acts of the 26th General Assembly became effective, and before the adoption of an amendment thereto providing for the notice of the appraisement. Chapter 37, Acts 27th General Assembly. It was held in *Ferry v. Campbell,* 110 Iowa, 290, that the first of the above acts was unconstitutional, because authorizing the taking of property without due process of law, and the defect therein cured by the last in providing for notice to those interested of the assessment

of value, and that, regardless of the time of decease, the personal assets not distributed were subject to the payment of the tax. While the right to the distributive share of personal property vests in the heirs at the time of the decedent's death, title to specific property and the amount to be received is not determined until distribution through the probate court is effected. This merely ascertains and segregates the particular portion to which each heir is entitled, and his title immediately attaches, and relates back to that of decedent of whom he takes. Sections 3362, 3364, Code; *Moore v. Gordon,* 24 Iowa, 158; *Weaver's Estate v. State,* 110 Iowa, 328. See *Foss v. Cobler,* 105 Iowa, 728. But at decedent's death it passes to the possession and control of the executor or administrator, subject to his disposal, and only after the payment of the debts and costs of administration is it to be distributed. On the other hand, the title to real estate descends to the heirs *eo instante* upon the death of the ancestor, with the quantity of each definitely ascertained. From that instant, subject to the right of the administrator to resort thereto for the payment of the debts of the deceased, they may dispose of the particular property as the owners, by sale, devise, or gift, and are entitled to possession and the rents and profits. Section 3378 *et seq.,* Code; *Laverty v. Woodward,* 16 Iowa, 1; *Toerring v. Lamp,* 77 Iowa, 488; 3 Washburn, Real Property, 18; 1 American Law Administration, sections 15, 16. The sections of the statute authorizing the administrator, in certain contingencies, to take possession of real estate, merely directs that he exercise existing authority over a class of property with which he formerly had no concern. Virtually he is but the agent of the owners to care for the estate, collect rent, and do other acts for their benefit under the direction of the court. *Valley National Bank v. Crosby,* 108 Iowa, 651. The devolution of the title is in no way interrupted or affected thereby, nor by his right to sell or mortgage for the payment of debts, as each may transfer a definite portion subject thereto. See 2 American Law Ad-

ministration, section 337. The distinction between the descent of personalty and realty is clearly recognized by our statutes. Chattels continue in the control of the administrator, subject to the direction of the probate court, and pass to the heirs only upon distribution. The title to the respective shares in land vests absolutely and immediately in the heirs or devisees upon the death of the owner. This depends not on an order of the court, and none is essential to the vesting of the title to the particular share in each heir. True, the land may be seized for the payment of the debts of the deceased by the administrator, or on certain contingencies the administrator may take possession. But in either event title is not suspended nor distribution delayed thereby. The title acquired by each heir or devisee upon the death of the owner is complete, and subject to these contingencies alone. It follows, then, that title to this land had vested absolutely in the three sisters of the deceased prior to the enactment of chapter 37 of the Acts of the 27th General Assembly, providing for notice "in all cases where real estate has been subject to or liable for the payment of the tax provided for in this chapter, or where any real estate has heretofore been appraised and the tax not yet paid." Evidently, then, if this land was not subject to the tax, the statute had no application, as no claim is made that it had been previously appraised. It will be observed that the provision is not in the nature of a curative act, but purports only to aid in collection of a valid tax. If, then, the land was "not subject to or liable for the payment" of the tax, the act has no application. Real estate, when taken by collateral heirs, was declared by the Acts of the 26th General Assembly to be subject to a tax of 5 per centum of its value, above the sum of $1,000, after payment of all debts, for the use of the state, and this made a lien thereon from the death of the decedent. But as held in *Ferry v. Campbell, supra,* no remedy, not invading the constitutional right to due process of law, existed or was then provided by the legislature by which the amount of the

tax could be fixed or enforced. A tax that cannot be exacted by any remedy is no tax at all. Any obligation which cannot be enforced is simply a moral, not a legal, obligation. A lien which cannot be made effective is not a burden to property. The inheritance tax is not levied on property, but depends wholly on the collateral heir taking property. It is on the right to succeed to ownership, and after this has passed to the heirs the estate has fallen out of the class at which the particular tax is aimed, and become subject to that rule of equal taxation, guaranteed to all property of like character. If a tax on succession, the amount of which cannot be ascertained, may relate back one year, so as to compel payment by those who have acquired property by inheritance within that time, then it may stretch back over a period of 20 or any number of years, and the citizen never know with any degree of certainty what burdens are to be imposed. If an unenforceable lien for an indefinite sum may be created, and the next legislature either abrogate it or provide an effective remedy at pleasure, then this may be done by any subsequent general assembly, and all property put in continued jeopardy, and the freedom of disposition entirely destroyed. Section 30, art. 3, of the constitution, requires that all laws for the assessment and collection of taxes for state, county, and road purposes shall be general and of uniform operation throughout the state. This refers to the principle or plan of taxation, and not to specific taxes. "It means that all individuals and all classes shall be uniformly taxed." A different tax may not be exacted from one person than from another, unless differently situated; nor from a designated group of persons than from another, unless difference in condition or relation or situation suggest and justify such difference. Nor may different burdens be imposed on property of the same kind in like situation. Otherwise the rule of uniformity exacted by the constitution would be destroyed. "The rule means that all individuals and all classes must contribute uniformly with like individuals and like

classes to the burden of taxation." *Warren v. Henly,* 31 Iowa, 31. To levy a tax on property, not the succession thereto, because acquired by collateral inheritance not imposed on other property, would be a clear violation of this section of the constitution; for the mere manner of obtaining property would not seem to afford a reasonable basis for a classification resulting in discrimination in its taxation. It is certain, however, from the language of the acts under consideration, that nothing of the kind was intended by the legislature. As the land "has not been subject to or liable for" the payment of the tax, the district court rightly found there was no liability to the state therefor. *In re Rahrer,* 140 U. S. 545 (11 Sup. Rep. Ct. 865, 35 L. Ed. 572), is not in point, as that decision merely holds that the enactment of the so-called Wilson bill removed the impediment to the enforcement of the Kansas prohibitory law with respect to acts committed after its enactment. Undoubtedly a tax may be exacted on the inheritance of land by collateral heirs, occurring after the enactment of the statute providing for notice of the appraisement. Neither is *Gelsthorpe v. Furnell,* 20 Mont. 299, (51 Pac. Rep. 267, 39 L. R. A. 170), decisive, as it appears therefrom that real estate in Montana is subject to the control of the court, and held in possession by the administrator until the order of distribution. This appears from the following excerpt from the opinion: "Clearly, it is not obnoxious to the constitution to lay a tax on the right to take, even where such right is vested, while the estate is subject to the control of the district court to ascertain the exact value of the right, and the possession of the executor for the purposes of administration." As already pointed out, real estate in this state is not within the control of the probate court in any case for such purpose, and the possession of the administrator, when taken in the contingencies specified, is not for the purposes of administration, but solely for the benefit of the heirs.—AFFIRMED.