In re Matter of the Estate of GEORGE WELLS, Deceased.

**Collateral inheritance tax:** ASSESSMENT AND COLLECTION. The property of a decedent, whether disposed of by will or descent, becomes the property of the devisees or heirs immediately upon his death, and the collateral inheritance tax is to be assessed against and collected from the property owned by decedent at the time of his death and subject thereto.

**Same:** PROPERTY SUBJECT TO TAX. A testator made two wills, giving by the first will his entire estate to his wife, who died prior to testator, leaving as her heirs a sister and children by another sister. By his last will he gave the sister of his deceased wife a specific sum with the balance of his estate to his heirs. The heirs of the deceased wife contested the last will, but compromised under an agreement by which the will was to be probated, the sister to have the sum bequeathed to her, and they were to be paid specific sums out of the estate in full satisfaction of their interests therein. *Held,* that upon probate of the will the entire estate vested in the devisees, and that as the children of the deceased sister took nothing under the will, but only by virtue of the settlement, the amount received by them was not subject to the inheritance tax; although by an equally divided court the finding of the lower court that the bequest to the deceased wife's sister should pay the tax is affirmed.

*Appeal from Grundy District Court.*—HON. FRANKLIN C. PLATT, Judge.

Saturday, April 10, 1909.

George Wells died in 1906. Shortly afterwards a paper dated June 5, 1902, purporting to be his last will, was filed for probate. Thereupon Martha Comstock, Kate M. Wheelock and George W. Murray presented a will of prior date and contested the first-mentioned will on the ground that deceased was of unsound mind when he signed it. Pending this contest, and on April 22, 1907, a compromise was tentatively effected, by the terms of which the contestants agreed to withdraw the objections to the last will and allow it to be admitted to probate, that a person selected by a majority of the heirs of deceased be appointed administrator with the will annexed, instead of Mrs. Comstock, who had been nominated by the testator, and, in consideration of this, said heirs agreed that the administrator pay Martha Comstock $50,-000 and Kate M. Wheelock and George W. Murray $75,-000 each within 30 days after the qualification of the administrator. The stipulation was signed by all parties and, upon being filed, was approved by the court and compliance therewith directed. All but $10,000 was paid in pursuance of the order. This amount was retained by the administrators until liability for the inheritance tax should be settled. On hearing the district court found that the inheritance tax should be deducted by the administrators from the $50,000 before payment to Martha Comstock, that the full amount stipulated be paid Mrs. Wheelock and Murray, and that the administrators pay the inheritance tax thereon. Martha Comstock and the administrators appeal.—*Affirmed.*

*C. E. Pickett,* for appellants Mullan and Gavin.

*Wade, Dutcher & Davis* and *Sullivan & McMahon,* for appellant Comstock and appellees Wheelock and Murray.

*H. W. Byers,* Attorney General, *E. A. Crary,* County Attorney, and *George Cosson,* for State Treasurer Morrow and State of Iowa.

LADD, J.—The last will of the testate admitted to probate in pursuance of the stipulation provided a legacy of $50,000 for his deceased wife's sister, Martha Comstock, and nominated her to be appointed executrix of his estate. Save this the entire estate was given to his heirs. By the terms of the earlier will, the entire estate was left to his wife, who departed this life some twelve years before he did, leaving as her only heirs her said sister and Kate M. Wheelock and George W. Murray, children of another sister. These heirs of the deceased wife contested the last will on the ground, as was alleged, that the testator was of unsound mind, and pending such contest a tentative agreement of compromise was prepared which became effective upon being signed and approved by the court. In pursuance of this the contest was withdrawn, the will was admitted to probate, Martha Comstock declined to act as executrix, and administrators with will annexed were appointed. In consideration of the contestants' agreement to all of this, it was stipulated:

That the administrator of said estate shall within thirty days of his qualification pay to Mrs. Martha Comstock the legacy of fifty thousand dollars ($50,000) given her under the said will, and that said administrator shall pay within thirty days as aforesaid to Mrs. Kate M. Wheelock, the sum of seventy-five thousand dollars ($75,000), and to George W. Murray the sum of seventy-five thousand dollars ($75,000); said sums and each of them to be paid in cash, or in notes secured by real estate mortgage acceptable to said Martha Comstock, Kate M. Wheelock, and George W. Murray. In case the said sums should not be paid as aforesaid within thirty days after the qualification of administrator as aforesaid, then said sums shall bear interest to date of payment at 5

percent from the end of said period of thirty days as aforesaid.

The stipulation was not to be binding until signed by all parties and approved by the court or judge thereof, and, "when payments are made as herein provided, shall be in full settlement of all questions involved in the contest of said will, and the payments herein provided to be made to the said Mrs. Martha Comstock, Kate M. Wheelock and George W. Murray shall be in full satisfaction of all claims of every kind, character and nature which they or either of them have against the estate and property of the said George Wells, deceased." The administrators have complied with this agreement save in retaining $2,500 out of the sum to be paid Martha Comstock and $7,500 of that to be paid Mrs. Wheelock and Murray. That the inheritance tax should be assessed against the amount taken by Mrs. Comstock is conceded; the sole controversy being whether it shall be deducted from the $50,000 or be paid by administrators from the general assets of the estate. As to the amounts to be paid Kate M. Wheelock and George W. Murray, there is no claim that the tax should be taken therefrom; the sole contention of the administrators being that it should not be assessed against these sums. Their appeal may be first considered. They argue that the money paid to Mrs. Wheelock and Murray was never received by the heirs of testator, and therefore formed no part of the estate in contemplation of the law for the purposes of the inheritance tax, that payment of the same reduced the estate precisely as the satisfaction of debts or claims established against it, and that it is not the policy of the law to tax payments made in the compromise of litigation. On the other hand, the treasurer of state insists the amount, upon probate of the will, passed with other assets of the estate to the heirs, and that payment to these contestants was necessarily by the heirs.

It will be noted that Mrs. Wheelock and Murray took nothing as heirs, or under the will, or as creditors, but solely by virtue of the stipulation. Nothing then passed to them directly from the deceased. Who did

1. COLLATERAL IN-
HERITANCE
TAX: assess-
ment and col-
lection.

acquire ownership of the property delivered to them upon testator's death? Manifestly the heirs of deceased, for the entire estate, save the legacy mentioned, was given to them. Upon being admitted to probate, the will spoke as of the time of testator's death and determined those then entitled to the estate. Having acquired, or in anticipation of acquiring, the property, they could buy their peace, as contended, but in doing so paid or authorized to be paid their own money. While this was done through the administrators, it was by virtue of the direction of the heirs, and not because of any obligation arising in the administration of the estate. In short, it was their money, acquired under the will, and, in so far as the collection of the inheritance tax is concerned, it was immaterial whether they paid it out in compromise of a contest or for other purpose. "The property, whether disposed of by will or descending under the statute of this State, became the property of the devisee, legatees, or heir immediately on the death of the testator or ancestor; and the measure of liability for the tax is fixed by an appraisement of the property made after the testator's death." *Ferry v. Campbell,* 110 Iowa, 290; *Herriott v. Potter,* 115 Iowa, 648. Under section 1467b, Code Supp. 1907 (Acts 28th General Assembly), "the tax imposed under chapter four (4) of title seven (7) of the Code shall hereafter be assessed against, and be collected from property of every kind, which at the death of the decedent owner" is subject thereto. See *Morrow v. Durant,* 140 Iowa, 445. The inquiry then necessarily is: Who took the property at decedent's death?

Payments in the adjustment of conflicting claims to an estate by those asserting title thereto can not be con-

strued as debts, nor treated as expenses in its settlement.

*In re Westburn's Estate,* 152 N. Y. 93 (46

2. SAME: prop- N. E. 315), is somewhat in point. There
erty subject
to tax.
deceased willed his entire estate to one Bur-
gess. The children of a deceased brother, having con-
tested the will, successfully contended that the cost of this
litigation should be deducted from the appraised value of
the estate in assessing the inheritance tax. The court held
otherwise, saying: "The tax imposed by the statute is
upon the interests transferred by will or under the intestate
law of the estate. The devolution of the property and the
right of the State have their origin at the same moment
of time. The ascertainment of the value of the taxable
interest and the fixing of the tax necessarily takes place
subsequent to the death; but the guide is the value at
the time of death, when the interests were acquired. The
fact that the appellants were put to expense in asserting
their rights and were embroiled in expensive litigation to
obtain them was their misfortune. It did not diminish the
value of the interests which devolved upon them on West-
burn's death. It was a loss, but a loss to their general
estate. It did not prevent them receiving the whole in-
terest transmitted to them." Indeed, there seems to be
no escape from the conclusion that the entire estate, save
the legacy, including the sums to be paid these contestants,
passed to the heirs of deceased upon his death, and that
payment thereof is in law by them, rather than an ex-
pense of the estate. The decisions relied on by the ad-
ministrators, as we read them, are not inconsistent with
this view.

*In re Hawley's Estate,* 214 Pa. 525 (63 Atl. 1021),
there were two wills, as in this case, the last of which con-
tained a legacy to employees of deceased. His two daugh-
ters, who were residuary legatees under the first will con-
tested the last on the ground of deceased's incapacity. A
compromise was effected, as a result of which probate of

the last will was denied, and the employees paid $55,000. As this was not collusive, the court held that as the will was set aside nothing passed thereunder to the employees, and that payment to them was as to creditors out of the assets of the estate which passed to the lineal descendants of deceased, and therefore not subject to the tax. In other words, his daughters agreed that out of the moneys which the administrator otherwise would have paid to them the amount should be turned over to the employees. As they acquired it under the first will, it was not subject to the tax, and they might pay to whomsoever they should elect; whereas, in the case at bar, as seen, the estate when acquired by the heirs, and as they were collateral, was subject to the tax, and in paying it out, or authorizing the administrators to do so, they were handling their own property precisely as in the cited case.

*In re Kerr's Estate,* 159 Pa. 512 (28 Atl. 354), one Mrs. Palmer left an estate to Mrs. Kerr, a stranger in blood. The will was contested by the heirs and the next of kin of deceased, but upon compromise with the heirs and next of kin of Mrs. Kerr, who had died in the meantime, the contest was withdrawn; the heirs and next of kin of Mrs. Kerr withdrawing claims to portions of the estate of Mrs. Palmer. The question was whether the portion of the property to which the heirs and next of kin of Mrs. Kerr had withdrawn all claim was taxable as a part of Mrs. Kerr's estate. The tax had been paid thereon as a part of the estate of Mrs. Palmer, and, as in a controversy over the identical property title was settled in the heirs and next of kin of Mrs. Palmer, it never passed to Mrs. Kerr. The decision was on the theory that Mrs. Kerr never became the owner thereof; the court observing that: "No liberality of construction can extend the language of the statute so as to make it include either moneys paid to extinguish the title of persons claiming adversely to the decedent, whose estate is liable to taxation, or prop-

erty surrendered by way of compromise to persons so claiming, and thus never forming part of decedent's estate at all." The impairment was of the estate of deceased due to the impeachment of the will as the court held, and not of that to which her heirs were entitled. No one contends that the compromise in the case at bar affected Wells' title even remotely.

*In re Pepper's Estate,* 159 Pa. 508 (28 Atl. 353), the will gave the estate to collateral kindred and strangers, and to avoid a contest they yielded a portion of the estate to a son. The issue was whether this portion was subject to the tax. In deciding in the negative, the court said: "We have reached the conclusion that under the most favorable construction of the act, so far as respects the contention on behalf of the commonwealth, they are not liable, and for the reason that the amount paid the caveator was never received by them as legatees, and under the act it is only so much of the estate which actually passes to them by virtue of the will that is liable to the tax. It will readily be seen, if the contest instituted by the caveator had been successful, he would be entitled, under the intestate law, to the entire estate, and freed from the tax; but, instead of further litigation, he accepted a portion of the estate, relinquished his claim to the balance, and thus, of course, reduced the amount passing to the legatees, and, in fact, to the extent of the amount he received, the will is a nullity, so that all the legatees take is the amount of their bequests." The theory upon which this decision proceeds manifestly is that the portion of the estate passing to the son was never accepted by the legatees; they waiving their right thereto. Neither a gift or a bequest is effective as a transfer until it is accepted, for acceptance is as essential as the offer. Assent to a provision in a will for the benefit of a legatee or devisee ordinarily will be presumed; but if assent is withheld, or the benefits be renounced, the interest involved will not pass to the beneficiary intended.

*In re Stone's Estate,* 132 Iowa, 136.   Upon renouncing all claim to the property *In re Pepper's Estate,* it passed to the son, and of course the succession was not taxable.   Here the devisees under the will probated did not refuse assent to or renounce any benefits under the will.   Had they done so, none of the money stipulated to be paid to these contestants would have passed to them.   The transfer could have been effected in no way other than heirs taking under the will and transferring to the Mrs. Wheelock and Murray by contract.   See *Greenwood v. Holbrook,* 111 N. Y. 465 (18 N. E. 711).

*In re Cook's Estate,* 187 N. Y. 253 (79 N. E. 991), certain nephews and nieces took under the will the residuary estate.   In effecting a compromise they assigned their interest in said estate to the widow, and the question arose whether the tax thereon should be 5 percent as was provided when property passed to collateral heirs, or 1 percent, when taken by the widow, and the court held that the widow did not take under the will, but by assignment from the nieces and nephews, saying: "A succession tax is measured by the legal relation which the legatee bears to the testator and is not affected by the relation which an assignee of the legatee bears to him."   The theory of the court was that the estate vests at the testator's death, and that as the legatees did not refuse the bequests, but transferred them to the widow, they thereby impliedly accepted, and the widow took, the residuary estate, not through transfer by the will, but through transfer by assignment.

Counsel for the administrators suggests that the payments to Mrs. Wheelock and Murray were for the purpose of removing a cloud on title which had arisen prior to Wells' death and for the purpose of clearing his right and power to pass title by will.   A sufficient answer is that his title to the property was not questioned by either party, and the contest merely challenged the paper purporting to be his last will as being such.   See *Winters v. Winters,* 102

Iowa, 53. If not his will, that first executed should have been given effect. In any event that estate would have been subject to the tax. The design of these payments was to induce the recipients to waive their claims under the first will and allow the estate to pass under the last will in default of a contest. In so passing it became subject to the inheritance tax, and moneys paid out by those receiving it, whether in litigating the contest or in buying their peace, ought not to be deducted from the estate in ascertaining the value of property subject to such tax.

II. It is conceded that, if Mrs. Comstock took under the will, the inheritance tax should be deducted from the $50,000 to be paid her by the administrators and turned over to the State; but, if she took under and by virtue of the stipulation, the entire amount should be paid by the administrators and the inheritance tax thereon deducted from other assets of the estate. It will be noted that by the terms of the stipulation they are to "pay Mrs. Martha Comstock the legacy of fifty thousand dollars given her under said will." The only advantage she obtained through the stipulation was payment within thirty days of the qualification of the administrators, or interest at 5 percent per annum on the amount thereafter until paid; whereas, but for this, payment could not have been exacted within a year. On the other hand, payment was to be in satisfaction of all claims she might have against the estate. The evidence indicated that she had been housekeeper of deceased and his bookkeeper since the death of his wife, and for the purposes of the case it may be conceded that she had some claim for services rendered. By the terms of the stipulation, however, she waived this, as also did she the right to administer the estate. That the consideration was insignificant, as above indicated, should be given some effect in construing that instrument; but in the face of the provision that she be paid the legacy "given her under the will," it seems to the writer that there is no escape from the conclusion that the sum stipulated

passed to her by virtue of the will rather than the contract, and therefore that the administrator rightly deducted the inheritance tax therefrom. Upon this point, however, the members of the court are equally divided, and on the appeal of Mrs. Comstock the order of the district court is affirmed by operation of law.—*Affirmed.*