BERTHA EDDY, Appellee, v. ELIZABETH SHORT et al., Appellants.

TRUSTS: Burden of Proof in re Sale. A trustee who sells the subject-matter of the trust to his own son thereby casts upon himself the burden to show, when his act is questioned, that the sale was just and fair to the *cestui que trust*. Evidence held not to meet this burden.

TAXATION: Inheritance Taxes—Scope of Remedy for Collection. The total collateral inheritance tax accruing on the passage of an estate

is not an indivisible lien on *all* the property passing to *all* the collateral heirs or beneficiaries. In each case, there are as many "taxes" as there are takers. The sole obligation of each taker is to respond for his particular tax, either personally or by sequestration of any of the property so taken by him.

*Appeal from Allamakee District Court.*—W. J. SPRINGER, Judge.

NOVEMBER 23, 1920.

REHEARING DENIED MARCH 11, 1921.

SUIT in equity to foreclose a mortgage. The defendant set up a plea of payment of $2,000, being the agreed value of certain property conveyed to the plaintiff's grantor. The plaintiff admitted that a credit was due for such property to the amount of $1,200, and no more. The trial court allowed the credit at $1,200, and entered decree for the balance. The defendant has appealed.—*Affirmed in part; reversed in part.*

*H. M. Havner*, Attorney General, *William S. Hart*, and *H. E. Taylor*, for appellants.

*D. J. Murphy*, for appellee.

EVANS, J.—I. Two quite distinct cases are presented to us under the above title, the second case being made by an intervention. The case on the intervention will be considered in a separate division, and no account will be taken of it at this point. Elizabeth and William Short are wife and husband, and are the makers of the note upon which suit is brought. The plaintiff holds the note as legatee under the will of Hannah Adams. For many years, Hannah Adams had a resident agent, Hendrick, in Allamakee County, who handled certain funds in her behalf and made loans therefrom and collected the same. Elizabeth Short was the owner of certain town property in the town of Waukon, known in this record as the Farmers' Home property. She executed a mortgage on the said Farmers' Home property to Mrs. Adams, to secure a loan of $2,700. Later, she secured another loan of

1. TRUSTS: burden of proof *in re* sale.

$400. These loans were negotiated through Hendrick. At the time of the last loan, she deeded the Farmers' Home property to Hendrick by conveyance duly executed by herself and husband, as security for the two loans. Hendrick executed a written agreement disclosing the trust character of the conveyance, and agreeing to sell the property and to credit $2,000 of the proceeds upon the two notes in question. The surplus, if any, was to be retained by him as a commission. The same loans were secured by a mortgage upon other property. Some time thereafter, Hendrick sold the property for $1,200 to a purchaser who was his own son, and his associate in business. He credited such amount upon the note, less $50 commission. He testified that Mrs. Short orally consented to the price and to the sale, shortly before it was made. This contention is stoutly denied by Mrs. Short. The controversy presented here, therefore, is one of fact, and the question is whether Mrs. Short was entitled to a credit of $2,000 or of only $1,200.

We have gone through this record with much care, and are constrained to a different conclusion from that reached by the trial court. The burden of showing an oral modification of the written contract was upon the plaintiff. In view of the direct conflict between the two principal witnesses, the circumstances surrounding the parties become of great importance in their corroboration of one or the other. Hendrick testified that he called upon Mrs. Short and advised her that he could not get more than $1,200; also, that he told her that his son would give $1,200, and that that was the best he could get; also, that "she authorized the sale for $1,200, if I could not get any more." The son, the grantee of the deed, corroborated this evidence, to the effect that he himself had had a conversation with Mrs. Short, wherein she agreed to the sale. The denial by Mrs. Short was unequivocal, and has the support of much corroboration in the circumstances. She denied that she had any acquaintance with the son or that she had ever talked with him or had ever known him by sight. The evidence is undisputed that the property was worth more than $2,000. Hendrick never made any effort to sell the property to any person except his son. His own testimony describes the consent of Mrs. Short as qualified: "If I couldn't get any more." Admittedly, he did not try to get any

more, but sold the property immediately to his son. He sustained a relation of trust to Mrs. Short, in that he held the title to her property as a trustee. In selling the property to his own son and business associate, he put himself in a position where his interest in his son was in conflict with his duty as a trustee. Because of that fact, he must take in a court of equity an added burden of proof, and show that the transaction was, nevertheless, just and fair to his *cestui que trust*. In meeting this burden, he has relied wholly upon the alleged consent of Mrs. Short, and upon the fact that the sale made was the best that he could get. We do not think that he has met the burden. In the light of the fact that, when the deed was made, he had agreed in writing to a credit of $2,000 in the event of sale, and of the further fact that the property was worth in excess of $2,000, a sale to the son for $1,200 is not only meager evidence of good faith, but is very suggestive of the contrary. That his acts were binding upon his principal is not disputed. We reach the conclusion, therefore, that the defendant, Elizabeth Short, should be credited upon her note with the sum of $2,000 as of the date of the sale of the property.

II. Before the trial of the case set forth in the foregoing division, there was an intervention therein by the treasurer of the state of Iowa and by John M. Collins as administrator of the estate of Hannah Adams. Their petition prayed that the proceeds of the note sued on in the main case should be turned over to the administrator for the benefit of the state treasurer in the payment of an alleged inheritance tax due from the estate of Hannah Adams. Hannah Adams died testate in 1904. Her domicile, at the time of her death, was in Orange County, Florida. Her personal estate was administered there. The plaintiff, Bertha Eddy, was one of the legatees of her will. She acquired the note in suit, as such legatee. Approximately $45,000 of the estate of Hannah Adams had a situs, for the purpose of the collateral inheritance tax, in the state of Iowa. We so held in *In re Estate of Adams*, 167 Iowa 382. The note in suit was a part of such $45,000. This also was administered in Florida, as a part of the personal estate. The same is true of the entire $45,000 which had a situs in Iowa. There was a considerable personal estate besides such $45,000.

2. TAXATION: inheritance taxes: scope of remedy for collection.

Collins obtained appointment as ancillary administrator, for the purpose of collecting the collateral inheritance tax due the state of Iowa upon the property having situs here. No previous administration had been had in this state, nor had resort been had to any court in this state for the collection of any cause of action belonging to the Hannah Adams estate.

The note in suit being a part of the property which had a situs here, and the same having passed to the plaintiff under the will of the testatrix, she was chargeable with the succession tax thereon, and the note itself was charged with a lien therefor. The note was also chargeable with a lien for any other succession tax due from the plaintiff as a beneficiary of the same will. This much the plaintiff conceded. She therefore paid the full amount of tax due from her on the property received by her from the Hannah Adams estate. Her legacy was charged with certain life uses in favor of her father and mother, who were likewise chargeable for some amount of succession tax. The plaintiff conceded this also, and paid the full amount of tax due from her father and mother as beneficiaries of such estate. The state treasurer, however, insists upon a lien for the full amount of the collateral inheritance tax upon the total sum of $45,000, regardless of the severalty of the beneficiaries who received the respective successions. The theory thus presented is that the state has an indivisible lien upon the entire estate for the sum total of the inheritance taxes chargeable against the respective beneficiaries, and that it may, if it must, appropriate a single legacy to the payment of the respective succession taxes against all. This contention is resisted by the plaintiff. Her position is that she is chargeable with her own tax, and with nothing more. The trial court sustained this position. We sustain it.

The basic error in the contention of the state is that it assumes the collateral inheritance tax to be a tax upon the *estate* of the decedent, and upon the property thereof. It is not. This has been held repeatedly and with emphasis in our previous decisions. Though the language of the statute might be thus construed if there were not a constitutional impediment, we have construed it otherwise to save its constitutionality. We have held expressly that it is not a tax upon the *property*, but a tax only upon each right of succession. The tax against each beneficiary

is chargeable to him, and is chargeable upon the property which he receives. Unless there is a beneficiary to take, there is no succession and no tax. We have held that the legatee or beneficiary may renounce his gift, and may thereby defeat the right of the state to a succession tax. *In re Estate of Stone,* 132 Iowa 136; *Morrow v. Durant,* 140 Iowa 437. In the *Stone* case, the legacy renounced fell into the estate, and was distributed to beneficiaries who were exempt from tax. A few brief quotations from our previous cases will be a sufficient indication of our past holdings on this question. The initial case was *Herriott v. Potter,* 115 Iowa 648, wherein we said:

"A different tax may not be exacted from one person than from another, unless differently situated; nor from a designated group of persons than from another, unless difference in condition or relation or situation suggest and justify such difference. Nor may different burdens be imposed on property of the same kind in like situation. Otherwise, the rule of uniformity exacted by the Constitution would be destroyed. 'The rule means that all individuals and all classes must contribute uniformly with like individuals and like classes to the burden of taxation.' *Warren v. Henly,* 31 Iowa 31. To levy a tax on property, not the succession thereto, because acquired by collateral inheritance not imposed on other property, would be a clear violation of this section of the Constitution; for the mere manner of obtaining property would not seem to afford a reasonable basis for a classification resulting in discrimination in its taxation."

In the *Stone* case, 132 Iowa 136, 140, we said:

"The collateral inheritance tax is on the right to succession to property, and not on the property itself, and it is collectible out of *each specific share or interest, not out of the general property of the estate.*"

In *Morrow v. Durant,* 140 Iowa 437, we said:

"It must be conceded that the language of this section will bear such construction; but, if we were to place such construction upon it, it would destroy Section 1467 and render it unconstitutional. It has heretofore been held by this court that the constitutionality of our collateral inheritance tax law can be sustained only on the ground that it is not a tax on the property itself, but upon the right to succession to property, and that a

tax on the property itself, on the ground that it was acquired by collateral inheritance (which tax was not imposed on other property), would be a violation of the Constitution.''

In *Wietung v. Morrow,* 151 Iowa 590, we said:

''In its final analysis, the argument of appellant is that, as to foreign estates, the collateral inheritance tax due the state of Iowa should be construed as a tax upon the property located in Iowa, and not a tax upon the succession to property to be collected from the beneficiaries. We have held heretofore that the constitutionality of our collateral inheritance tax statute can be sustained only on the ground that it is not a tax on the property itself, but upon the right to succession to property.''

It will be seen from the foregoing that the question of the nature of the tax under consideration is not an open one.

Some claim is made in argument that the later amendments of the statute make the tax a lien upon the entire estate. Granting that such amendments may be thus construed (which we doubt), it does not remove the constitutional limitations of legislation on the subject. To charge the property of the estate for the tax due from one or several beneficiaries is to tax the property. It would also render the statute inconsistent, in that it would charge the property of a beneficiary exempt from a tax, with a tax, nevertheless, of another nonexempt beneficiary. It is strenuously argued that this construction of the statute is necessary, to render it effective and to enable the interveners to collect at all the tax due to the state of Iowa from the several successions appearing in the Adams estate. It is said that the executors and beneficiaries of the estate fraudulently colluded to avoid administration in Iowa and to intermingle the Iowa property with the body of the estate, and thereby to prevent the collection of any collateral inheritance by this state. If any of the beneficiaries or of the executors violated our statute in removing the property, the state has a sufficiently drastic remedy. If they did not violate the statute, we see no basis in the facts alleged for the charge of fraud. The place of domicile was the proper place for administering the entire personal estate. *Caruth v. Caruth,* 128 Iowa 121; *In re Estate of. Titterington,* 130 Iowa 356. Such fact did not defeat the right of the state of Iowa to a collateral inheritance tax upon the succession to property hav-

ing a situs here, though it did render the enforcement of such right more inconvenient. The principal legatees were and are all residents of Allamakee County in this state. Each of them was no less liable for the tax upon the succession received by him as to the Iowa property. We see nothing to the claim that the Iowa property was fraudulently intermingled with the rest of the estate, so that it could not be identified on any succession. It was necessarily intermingled, if administered. The principal legacies were payable out of the body of the estate. Presumably, every recipient of a general legacy received his pro rata proportion of every part of the estate not specifically devised. We can see no reason why ascertainment could not be had of the amount of the succession to each beneficiary of the Iowa estate by a method of pro-rating such as we approved in *Wietung v. Morrow,* 151 Iowa 590. Indeed, Section 1431-a39, Code Supplement, 1913, makes express provision of this kind. The appellant's contention for the indivisibility of one lien for all the taxes upon all the property of the estate is contradicted by the principal case upon which it relies. *Smith v. Browning,* 171 App. Div. (N. Y.) 278. Much of the opinion is quoted in appellant's brief. Such quotation includes the following as a part thereof:

"It is the transfer of the property that is taxed. The lien of the tax attaches to the property so transferred immediately upon the death of the decedent. In ascertaining the amount of the tax, the aggregate of the value of all the items transferred is the basis for computation, and the tax is not segregated and an aliquot part thereof collectible out of *each item,* but it becomes payable and is a lien upon all of the property *transferred to the particular individual.*"

It will be readily seen that this is not a holding that a lien attaches for one tax upon all the property of the estate. It is a holding that the lien is indivisible as to the particular beneficiary who may receive several items of property. The sum total of tax due from him for each item received by him is chargeable against each and all. This is in accord with previous decisions of the same court. We borrowed our statute from the New York statute, and the construction put upon such statute by the New York court properly commands consideration. *In re Estate of Adams,* 167 Iowa 382.

We quote from the same court in *In re Estate of Westurn*, 152 N. Y. 93 (46 N. E. 315):

"It has been steadily maintained that the tax, while in a general sense a tax on property of a decedent, is, in its essential nature, under the legislation on the subject, a tax on the right to succession to the property, imposed upon and collectible out of each specific share or interest given by will or derived under the statutes of descent or distribution, and limited as to each share or interest to its value, with a superadded personal liability for the payment of the tax by the person taking the interest. The tax is computed, not on the aggregate valuation of the whole estate of the decedent, considered as the unit for taxation, but on the value of the separate interests into which it is divided by the will or by the statute laws of the state, and is a charge against each share or interest according to its value, and against the person entitled thereto."

This conclusion logically and necessarily results from the original holding that the tax in question is a tax upon succession only, and not a tax upon property.

It appears in this record that the plaintiff herein received other property than this note. It was not open to her to say that she would pay the tax chargeable for her succession to this note. The state was entitled, as against her, to collect *all* the tax due *from her* from any part of the property to which she succeeded. That, and nothing more, is what is meant by the indivisible lien.

The plaintiff herein having paid in full the tax chargeable to her, and having removed all complication or question as to the liability of the note for the tax due from her father and mother by paying such tax in full, she has met her full obligation. Neither she nor her legacy is chargeable for the succession tax upon other legacies to other beneficiaries. The order of the trial court to such effect must, therefore, be affirmed.

The judgment in the main case on defendant's appeal will be reversed. The judgment in the case made on intervention on the appeal of Collins and the state treasurer will be affirmed.—*Reversed in part; affirmed in part.*

Weaver, C. J., Preston and Salinger, JJ., concur.