MARY MACKAY GREENWOOD, Respondent, *v.* EDMUND F. HOLBROOK et al., Executors, etc., Respondents; ISAAC J. GREENWOOD, Appellant.

One G. died leaving a widow, two daughters and two sons. By his will he gave to his widow "the net income of his estate," real and personal, for life or until she again married. Upon her remarriage the rents, profits, income and interest were during the remainder of her life to be divided between the widow, the daughters and sons, each class to take one-third, and in case of the death of either of the sons or daughters his or her issue were to take the parent's share, and if there was no issue the surviving son or daughter was to take that share. Upon the widow's death the property was to be divided among the children, each to hold the share given during life, and after the death of either the share of the one so dying went to his or her lawful children and to the lawful issue of every child who may have died. In case of the death of either son or daughter without issue the share went to the other son or daughter. The daughters opposed probate of the will, but withdrew their opposition upon an agreement, declared by its terms to be binding on the parties to it "and their respective heirs, executors and administrators," made between the widow, the children of the testator and the husbands of the two daughters, by which she covenanted during widowhood to pay over to each of the children, and in case of the death of either, to his or her "legal representatives," one-eighth of the net income of all the testator's real and personal estate. One of the daughters died leaving a husband and no issue her surviving, also leaving a will, by which she appointed her husband executor and gave him all her property, including her interest in her father's estate. The husband died and his executors claimed the share of the income to which, if living, the wife of their testator would have been entitled under the will of her father. In an action to have the rights of the parties under said agreement determined, *held*, that the term "legal representatives" used in said agreement had the same meaning as the similar terms used in the statute

of distribution (2 R. S. 96, § 75), *i. e.*, children or their lineal descendants and not executors or administrators; that the general provisions of the will of G. and the scheme of the statute, so far as they relate to or point out the beneficiary or distributee, are the same; that the agreement is to be read as if the provisions of the will, as modified by it, were incorporated in it, and its only effect is to give to the testator's children a larger share of the testator's estate than they would have received under his will, but to be distributed in the same way, and so there being no legal representatives the next of kin of the deceased daughter were entitled to her share.

*Greenwood* v. *Holbrook* (42 Hun, 633) reversed.

(Argued October 25, 1888; decided November 27, 1888.)

APPEAL by defendant, Isaac T. Greenwood, from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 31, 1886, which affirmed a judgment of Special Term in favor of the executors of the last will and testament of William W. Wright, deceased. (Reported below, 42 Hun, 633.)

The material facts, other than those stated in the opinion, are as follows:

The plaintiff is the widow of Isaac John Greenwood. He died on the 14th of May, 1865, leaving a widow, two daughters, Sarah B., wife of William A. Martin, and Eliza Jane, wife of William W. Wright, and two sons, Isaac J. Greenwood and Langdon Greenwood. He also left a will by which he gave to the plaintiff during her natural life, or until she again married, the net rents and profits of all his real estate, and the net interest and income of his personal estate. It was offered for probate and opposition made thereto by his daughters and Langdon Greenwood. But the opposition was withdrawn in pursuance of an agreement made September 28, 1865, between the plaintiff, the four children and the husbands of the two daughters. It recited the facts above stated, and in consideration thereof the plaintiff on her part covenanted with the other parties, that during her widowhood she would pay over to each of the four children of John Greenwood one equal eighth part of the net income of all the real and personal

estate left by him (with certain exceptions not material here), beginning from the decease of the testator, provided they kept certain promises on their part (not now important), and she further agreed that in case of the death of either of the said four children during her widowhood "she would pay the one-eighth part of said income thereby agreed to be paid to the child so dying, to his or her legal representatives, so long as the said covenants and agreements shall be observed, performed and fulfilled as above mentioned."

The agreement was to take effect when the will was admitted to probate, and by its terms is declared to be binding on the parties to it, "and their respective heirs, executors and administrators." The will was thereupon admitted to probate. In April, 1880, Eliza Jane Wright died, leaving her husband surviving, but no issue. By her will her husband was appointed executor and she bequeathed to him all her estate, including such interest as she had acquired from her father. The husband died, and the defendants, Holbrook and Foote, were appointed the executors of his will. Upon this appeal that share alone is in question.

The plaintiff retains the one-eighth share of net income to which, if living, Eliza Jane would be entitled. The defendants, Holbrook and Foote, as executors of William W. Wright, claim it. The defendants, Isaac and Langdon, brothers of Eliza Jane, also claim her share. The plaintiff brought this action to have the rights of the defendants determined as they are declared by the clause of the agreement above quoted. After trial at Special Term, a decree was made adjudging the share of each child to be personal property, and as such subject to her testamentary disposition, and accordingly that the share of Eliza Jane passed under her will to her husband, William W. Wright; and that, as executors of his will, Holbrook and Foote were entitled to it. Isaac J. Greenwood appealed from that judgment to the General Term.

*James M. Hunt* for appellant. If the words "legal representatives" are used in the agreement as words of limitation,

and there be nothing in the context to prevent, they should be construed to mean " executors and administrators," but if they are used as words of substitution, they must be construed to mean next of kin. (*Drake* v. *Pell*, 3 Edw. Ch. 251, 269, 270 ; *Bridge* v. *Abbott*, 3 Bro. C. C. 224 ; *Barnes* v. *Otley*, 1 M. & K. 465 ; *Palin* v. *Hills*, Id. 470 ; *Tillman* v. *Davis*, 95 N. Y. 17, 25 ; *Slosson* v. *Lynch*, 43 Barb. 158 ; *In re Hall*, 2 Dem. 116 ; *Coster* v. *Butler*, 63 How. 311, 313 ; *Phyfe* v. *Phyfe*, 3 Bradf. 45 ; *McCray* v. *McCray*, 12 Abb. Pr. 3 ; *Cotton* v. *Cotton*, 2 Beav. 67, 69 ; *Walter* v. *Makin*, 6 Sim. 148 ; *Styth* v. *Monro*, 6 id. 49 ; 2 Jarman on Wills [R. & T. ed.] 649.) A contract should be so construed that force and effect be given to each and every part of the instrument. (*Wood* v. *Sheehan*, 68 N. Y. 365, 368 ; *Ward* v. *Whitney*, 8 id. 442, 446 ; *Hamilton* v. *Taylor*, 18 id. 358 ; 3 Jarman on Wills, [R. & T. ed.] 707.) The words "legal representatives" here means "next of kin" rather than "executors and administrators," and the agreement being made in modification of Mr. Greewood's will, to which it refers, is to be construed in reference to it ; in other words, all the circumstances which were before the parties during the negotiations of the agreement are proper to be considered in its construction. (*Evansville Bk.* v. *Kaufman*, 93 N. Y. 273, 281 ; *Western N. Y. L. Ins. Co.* v. *Clinton*, 66 id. 226, 331 ; *Colt* v. *Phoenix F. Ins. Co.*, 54 id. 595 ; *Wood* v. *Mitcham*, 92 id. 375, 376 ; *Quinn* v. *Hardenbrook*, 54 id. 83, 86.) The obligation to continue the payment of the annuities was doubtless dependent on the covenantees not again attacking the will. But a stranger in blood could not attack the will. (Code of Civ. Pro. §§ 2615, 2617, 2626, 2627.) The husband is not next of kin to the wife, nor her legal representative. (*Keteltas* v. *Keteltas*, 72 N. Y. 312 ; *Luce* v. *Dunham*, 69 id. 36 ; *Drake* v. *Gilmore*, 52 id. 389 ; Code of Civ. Pro. § 1870.) When he takes personal property, of which she has the title at the time of her dying intestate, he takes *jure mariti*, not as next of kin. (*Tillman* v. *Davis*, 95.N. Y. 17 ; *Robbins* v. *McClure*, 100 id. 398.)

*Clifford A. Hand* for respondents. The words "legal representatives," do not import the substitution of next of. kin, except by forced interpretation requisite to the giving effect to an intention manifested by those using the words. (2 Jarman on Wills [5 Am. ed.] 654, 660; *Phyfe* v. *Phyfe,* 3 Bradf. Rep. 45; *Lee* v. *Dill,* 39 Barb. 520; *Chapman* v. *Chapman,* 33 Beav. 556; *Taylor* v. *Beverly,* 1 Coll. 105; *Hinchcliff* v. *Westwood,* 2 De Gex & Sm. 216; *In re Crawford,* 2 Drew. 230; 118 Mass. 198; *Bridge* v. *Abbott,* 3 Bro. C. C. 187; *Drake* v. *Pell,* 3 Edw. Ch. 251; *Walker* v. *Makin,* 6 Sim. 148; *Cotton* v. *Cotton,* 2 Beav. 67; *Silliman* v. *Davis,* 95 N. Y. 17; *Halloway* v. *Clarkson,* 2 Hare, 521.) Ordinarily, and unless otherwise indicated by the context, a husband or wife is not within the class heirs. (*Tillman* v. *Davis,* 95 N. Y. 17; *Cushman* v. *Horton,* 59 id. 151; *Keteltas* v. *Keteltas,* 72 id. 315; *Luce* v. *Dunham.* 69 id. 39; *Murdock* v. *Ward,* 67 id. 387.) In the case of Mrs. Wright, the sums payable to her under the agreement were personalty. As such the beneficial right to their enjoyment would, by legal devolution, have passed to the husband in case she had died intestate. (*Barnes* v. *Underwood,* 47 N. Y. 356.)

DANFORTH, J. We differ from the conclusion of the court below (42 Hun, 633), and are of opinion that the proper construction of the agreement in question requires us to hold that the phrase "legal representatives" contained in it means "next of kin" to the child dying, and not the executors or administrators of that child. It must be conceded that it might mean either, and numerous cases are referred to in support of the contention of each party. No one case is, however, so like the present as to require its adoption, and little instruction would be given by an analysis of the decisions. Each judgment stands upon the construction or interpretation due to the words under examination, as they are looked at in the light of circumstances surrounding the parties to the instrument, and the situation of persons intended to be benefited. The agreement in this case was induced

by a will, in the provisions of which every party to the agreement was concerned.

It relates to property which, except for the agreement, would not go to the defendants, but to the plaintiff, if distributed under the will, or, if that was set aside, would pass according to its nature under the statute of distribution or descent. Both the will and statutes must have been in the minds of the parties, and we may naturally expect some aid from their provisions.

The testator gave to his wife " the net rents and profits of his real estate," and " the net interest and income " of all of his personal estate for life or until she again married. Upon her remarriage the rents, profits, income and interest above referred to were, by the terms of the will, to go, during the remainder of her life, to her, his sons and his daughters, one-third to each class, and in case of the death of either of his sons or daughters during the lifetime of his wife, leaving issue, that issue were to take the share which the parent would have taken ; and if there was no issue, then the surviving son or daughter, as the case might be, was to take that share and enjoy it until the wife's death. Upon her death the property was to be divided among the children, each to hold the share given during life, and after the death of either, the share of the one so dying, goes to his or her lawful children, and to the lawful issue of every child who may have previously died, " and in case of the death of either son or daughter, without issue, the share goes to the other son or daughter, as the case may be. It is thus seen, that the children take for life; their issue, if any, absolutely ; and if no issue, then the surviving brother or sister. In great detail, this wish of the testator is expressed and several times repeated. If the opposition to the will had continued to a successful end and the property distributed under the statute, the final result indicated by the testator would in like manner have been reached. Under that statute (2 R. S. 96, § 75), after the allotment of a third to the widow, the residue of the estate of an intestate is to be distributed by equal portions among the children and such persons as legally represent such children,"

if any of them shall have died before the deceased. "In case there be no widow, then the whole surplus is to be distributed equally to and among the children, and such as legally represent them." In this statute these words mean children or the lineal representatives of the children to the remotest degree, and not executors or administrators. But the term applies only to descendants, and not next of kin. The same statute, however, provides that "if there be no children nor any legal representatives of them," the distribution shall be to "the next of kin of the deceased." Again, the phrase "legal representatives" relates to children or descendants, and not executors or administrators.

The general provisions of the will and the scheme of the statute, so far as they relate to or point out the beneficiary or distributee, are the same. He is, first, the child of the testator or intestate; second, the descendant of the child, if any; third, the next of kin, who, under the facts before us, were brothers and sisters of the deceased child, as in the will they are specifically pointed out as taking when the child died without issue.

We come now to the agreement. The parties to it were the widow and children of the testator They had before them the will and its provisions and the statute which defined their rights in case the will was set aside. The contestants withdrew opposition and, in terms, accept and confirm the provisions of the will upon the promise of the wife of the testator that she will, during widowhood, pay over to them or their respective "legal representatives" a portion of the income, etc. As to that it is true they take under her and by contract, not under the will or from the testator, but the promise stands in the place of the testament, and in place of the provisions of the statute, and it cannot be supposed that any party intended to give a different direction to the share bargained for than that given by the testator to the bounty he intended to bestow. By the will the wife took during life, or until her remarriage, all the rents, profits and income, the children to receive none until one or the other of these events happened, but when one

and then the other event happened, first, the children, then second, their issue, and failing issue, the surviving brother or sister would receive each a portion.

By the promise of the wife, each child and the legal representatives of a child would, during her widowhood, receive one-eighth of those rents, profits and income. The will and the agreement relate to the same property, and provide only a different beneficiary. The agreement is to be read as if it had incorporated the provisions of the will as so modified; and that being so, we think the parties intended only to lessen the widow's share, and increase that going to the beneficiaries named in the will, without intending to give them, in the share so rescued, any other or different estate than that prescribed to them by the testator in the rents, profits and income accruing after the remarriage or death of the widow, or in the other property. The only effect of the agreement, therefore, as we understand it, is to give to them a larger share of the testator's estate than they would have received under his will, but to be distributed in the same way as his own bounty. The words used in the agreement are susceptible of that meaning, and we do not doubt that such was the understanding of the parties. The instrument was prepared in the course of litigation, apparently by advice and aid of counsel, and if framed with the intention we have ascribed to it is well expressed. If the intention had been different, there was no occasion to add any words, for a promise to pay the parties named would, in the case of one dying, have enured to his "executors or administrators," although they were not named, or if out of abundant caution it was thought best to express what would otherwise be implied, it would have been easy and natural to have used those words. If a man binds himself, his executors or administrators are bound, though not named. The parties to the agreement seem to have had both phrases and their interpretations in mind. They wanted to secure from the widow the stipulated portion of the rents and income during her widowhood or life, and on their part were willing to be bound

to keep the covenants which formed the consideration of her promise.   They therefore agree for themselves and "their executors or administrators," and bind her to pay to the children, or in case of death to the "legal representatives" of the one dying.   The selection of the latter phrase, in defining the objects of her obligation, does, in view of the situation of the parties, indicate an intention to describe by it the person who should, upon different contingencies, receive and enjoy the fruits of a compromise as the one to whom the money was due and to be paid, and not the person who should merely receive the money for administration.   This we regard as a controlling circumstance.   The judgment proceeds upon a different theory.   It should therefore be reversed, and, as there is no dispute as to the facts, judgment should be entered declaring the next of kin of Eliza Jane Wright entitled to the one-eighth of the income secured to her by the agreement, with costs in this court and in the Supreme Court, upon appeal, to be paid by the respondents Holbrook and Foote to the appellant Isaac J. Greenwood.

All concur, except PECKHAM and GRAY, JJ., dissenting.

Judgment accordingly.