[Civil No. 2525.   Filed January 10, 1927.]

[252 Pac. 521.]

TOM MacKENZIE, Appellant, v. VERNON S. WRIGHT, as Treasurer and Ex-officio Inheritance Tax Collector of the State of Arizona, Appellee.

Messrs. Chalmers, Stahl, Fennemore & Longan, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. A. R. Lynch, Special Counsel for Inheritance Tax Collector, for Appellee.

ROSS, C. J.—William Souffrien, who resided in Pinal county, Arizona, at the time of his death, and whose property was in said county, after naming in his will certain devises and bequests, gave and bequeathed the residue of his estate, amounting to $173,011.43, to Tom MacKenzie, the appellant, a stranger to the blood of Souffrien. William John Booth, a nephew of Souffrien and his sole heir at law, contested the will. In the midst of the trial of the issues raised by the contest, the lawsuit was compromised, the contest withdrawn, and the will admitted to probate. According to the terms of the compromise agreement, $70,000 of the residue were to be paid over or distributed to Booth and

the final decree so provided. Of the residue of the estate, then, MacKenzie kept $103,011.43 and Booth received $70,000.

Under the Inheritance Tax Act, chapter 26, Laws of 1922, when the party who receives property under a will or by the intestate law is a stranger to the blood of the decedent, the rate of the tax to be collected is higher than when such party is of the blood. Sections 2 and 3.

In the settlement with the state treasurer it was the contention of the treasurer that the inheritance tax due the state should be computed at the higher rate, upon the whole of the residue to wit, $173,011.43; whereas, the administrators with the will annexed and the appellant contended it should be computed at the lower rate upon the amount distributed or paid to Booth. The tax was paid to the state in accordance with the contention of the state treasurer, and amounted to $10,744.50 more than if it had been computed on the basis contended for by the administrators and the appellant. This was paid by the administrators under protest with the stipulation, to which the state treasurer was a party, that the appellant, he being the sole party in interest, could, if he so elected, within ninety days, sue for its recovery, and that if he did sue the treasurer would not interpose any objection to the propriety of bringing and maintaining the action in the name of MacKenzie without joining the administrators nor to the jurisdiction of the superior court to try and determine the legality of the collection of the protested payment. The question was presented to the trial court by a general demurrer to the complaint, and, the demurrer being sustained and judgment entered for defendant, it is here on appeal for our determination.

The question raised is whether the amount of the inheritance tax should be determined by the provi-

sions of the will or by the compromise agreement made by the parties and approved by the court.

Section 1 of the Inheritance Tax Act, with certain exceptions not here material, imposes a tax upon any transfer of property within the jurisdiction of the state, as there defined, at its clear market value "when the transfer is by will or by the intestate laws. . . . " Sections 2 and 3 fix the rate of the tax to be charged to the person or persons to whom is passed any property by a transfer. Section 4 provides for exemptions to the transferee. Section 5 makes the tax due and payable at the time of the transfer (with some exceptions not material in this case), and a lien on the property transferred until paid; and by section 6 such tax bears interest from the date of its accrual.

Under the law, if a person die without making a will his heirs inherit his property. He may, however, if he makes a will, transmit his property to whom he chooses. These two methods of devolution of property are recognized by the Inheritance Tax Act as all-inclusive, and it is manifest that the legislative purpose was that the recipient of property in either of such ways must surrender a small portion thereof, in the way of a tax, to his state. The intestate feature of the law is not involved in this case, the decedent having made a will specifically directing the devolution of his property. What he said in such will was that appellant MacKenzie should have the residue of his estate, which, when other legacies and the expenses of administration were cared for, amounted to the sum of $173,011.43.

A successful contest of the will would have defeated the testator's intentions and left his property to be disposed of according to the laws of intestacy, but when the will was probated his intentions as expressed therein were upheld and made certain of performance. The residuary legatee became, as of

the date of the testator's death, the absolute owner
of the residuum, and on that date the state's tax,
at the rate fixed for a legatee of his class, fell due and
became a lien thereon until paid. Nor do we think
these results are defeated or changed by a com-
promise agreement of the parties that consents to
the probate of the will on condition that the resid-
uary legatee will give to the contestant a named
portion of the legacy to withdraw the protest, even
though such agreement is approved by the court in
its order of distribution. The portion received by
Booth was not nominated in the will, nor did he
inherit it. Though it may have come from the
testator's estate, it was not of the estate, but of the
property of the residuary legatee. Booth did not
receive it as heir to Souffrien, nor as devisee or
legatee. It was a consideration paid to him by
MacKenzie out of what he (MacKenzie) obtained
from the estate of Souffrien to withdraw the contest
and to consent to the will's being probated. Booth's
succession was through MacKenzie and not Souf-
frien. What Booth received was not in his hands
subject to the tax, as it was never intended to be
imposed upon transactions not made in contemplation
of death.

That the legislature might have provided that the
tax should be imposed upon the consideration paid
for the compromise is unquestioned, and we are not
able to say that such a rule would not be the more
equitable one; but it is quite evident that the language
used in the statute never contemplated the adoption
of such a rule by the courts.

The cases upholding the views herein expressed
are: *State* v. *Johnston*, 186 Wis. 599, 203 N. W. 376;
*Baxter* v. *Treasurer & Receiver General*, 209 Mass.
459, 95 N. E. 854; *In re Cook's Estate*, 187 N. Y. 253,
79 N. E. 991; *In re Graves' Estate*, 242 Ill. 212, 89
N. E. 978; *In re Wells' Estate*, 142 Iowa, 255, 120

N. W. 713; *In re Sanford's Estate,* 90 Neb. 410, 45 L. R. A. (N. S.) 228, 133 N. W. 870; *Estate of Rossi,* 169 Cal. 148, 146 Pac. 430; *English* v. *Crenshaw,* 120 Tenn. 531, 127 Am. St. Rep. 1025, 17 L. R. A. (N. S.) 753, 110 S. W. 210.

In the Massachusetts case (*Baxter* v. *Stephens, supra*), the court quotes from one of its previous decisions as follows:

"The agreement for compromise did not become a part of the will. Although the practice is to insert a clause in the decree to the effect that the estate shall be administered in accordance with the agreement for compromise established thereby, yet the rights of the parties growing out of the agreement rest upon it and the decree confirming it, and are not testamentary rights."

And later says:

"For reasons hereinbefore stated the amount of the tax is not changed by the fact that the agreement was approved by the court and made a part of the decree."

In *Cook's Estate, supra,* the legatees under the will assigned the legacy for a consideration, and we take it that is what was done *pro tanto* in this case, in effect. That court had this to say of the transaction:

"The compromise did not change the will. No settlement could change a word that the testator wrote. The will stands as it was written, and the most solemn instrument, executed by all parties interested, could not convert a bequest to the nephews and nieces into a bequest to the widow. As we said in another case, she takes under them 'by contract, not under the will or from the testator.' *Greenwood* v. *Holbrook,* 111 N. Y. 465, 471, 18 N. E. 711 [713]. A succession tax is measured by the legal relation which the legatee bears to the testator and is not affected by the relation which an assignee of the legatee bears to him. Here the legatees took the

residuum under the will. They succeeded the testator in the ownership thereof and their succession gives rise to the tax. The widow did not take the residue from the testator, for he did not give it to her. She took as assignee, not as legatee. Unless she took as assignee, she did not take at all. The legatees assigned to her and the rate of taxation is fixed by their relation to the testator. As she did not take through the will, the succession tax cannot be fixed at the rate of 1 per cent, as in the case of a bequest to a widow, but must be fixed at the rate of 5 per cent, as in the case of a bequest to nephews and nieces.''

In *Graves' Estate, supra,* the court made answer to a like contention as is made here, as follows:

''It is argued that the heir received the sum of $50,000 as the value of her interest in the estate by virtue of the fact that she was heir, and that it therefore passed by descent. In fact, however, she received nothing as heir. She received nothing from the estate. No beneficial interest passed to her under any statute. The money was paid to her by virtue of a contract with the heirs. Henry Graves died testate. His will disposed of all his estate. The whole of the residuary estate vested, at the instant of his death, in the residuary legatees. The inheritance tax was then due and payable. The beneficial interest in the property then passed to the legatees and their succession gave rise to the tax. Subsequent events did not affect it.''

Our Inheritance Tax Act is thought to have been copied after the Wisconsin act. The most recent case passing upon the question we are considering is from that state, being *State* v. *Johnston, supra.* In that case the decedent, Ellen A. Johnston, left no will and her property passed to her heirs under the intestate law. One of the heirs, Robert S. Johnston, having joined the Jesuit Order, executed an instrument abdicating and renouncing his inheritance in favor of Marquette College in the city of Mil-

waukee. The question was as to whether his portion of the inheritance should be exempt from taxation, he having designated an institution exempt from taxation as the beneficiary thereof. The court there said:

"Under the laws of descent, the property or the right to property would come or accrue to Robert S. Johnston upon the death of his mother. The college, if it is entitled to take at all, takes through and under him. Immediately upon the mother's death a tax accrued contemporaneously with the vesting of the property or right to property in Robert. This leads to the irresistible conclusion that the interest in the estate coming to him is subject to the tax. No right or authority is vested in him to modify or change the order of descent as is provided for by the laws of intestacy. No statutory provision exists for the substitution of another in the place of the heir or beneficiary. If Robert S. Johnston assumed such authority, it would be contrary to the statute in such case made and provided.

"We therefore conclude that the property coming to Robert S. Johnston from the estate of his mother is subject to an inheritance tax, as provided for by the statutes."

Some of the courts have held with appellant's contention, that the tax should be imposed upon the recipient of the compromise consideration at the rate provided for his class, just as though such consideration were a legacy or devise or had come to him under the intestate laws. *People* v. *Rice,* 40 Colo. 508, 91 Pac. 33; *Pepper's Estate,* 159 Pa. 508, 28 Atl. 353; *Kerr's Estate,* 159 Pa. 512, 28 Atl. 354; *State* v. *Probate Court,* 143 Minn. 77, 172 N. W. 902; *In re Thorson's Estate,* 150 Minn. 464, 185 N. W. 508.

The first case decided in Minnesota (*State* v. *Probate Court, supra*), was by a divided court, three of the judges following the rule of Colorado and Pennsylvania and two dissenting therefrom. The

dissenting opinion, written by Mr. Justice DIBELL, shows to our satisfaction that the majority rule adopted there is a departure from the statute, and that the rule he contended for, and the one we have announced, is the only logical rule under our statutes as they are now written.

The judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.