Nolan, J.
In April, 1943, the landlord, Malbone Garage, Inc., leased to the tenant, Meyer Minkin, premises at 160-170 Empire Boulevard, Brooklyn, New York, for usé as a garage and service station, and for the sale of gasoline, oil, and automobile accessories. The lease was in writing and was, concededly, prepared by an attorney. It provided for a term of one year, and further provided inter alia as follows: “ For the duration of the war, this lease may be renewed at the option of the tenant for further terms of one year each upon the same terms and conditions. After the termination of the war, the tenant shall have the option to renew this lease for a period of ten years * # (Emphasis supplied.) The tenant renewed the lease for two one-year periods, and in August and October of 1945, after the Japanese surrender, notified the landlord that he elected to renew for ten years from April 15, 1946, in accordance with his option so to renew “ After the termination of the war ”. On March 19, 1946, the landlord challenged the validity of the renewal, and after April 15, 1946, when the tenant’s term had expired, pursuant *111 to the last one-year renewal, took the position that the tenant occupied the premises as a month to month tenant hy virtue of the provisions of the Commercial Bent Law (L. 1945, ch. 3) and was liable for the payment of emergency rent, which amounted to more than the rent specified in the lease. On the tenant’s refusal to pay such rent, this proceeding was commenced by the landlord. The Municipal Court, in which the proceeding was brought, held that the tenant had no right to exercise his option to renew the lease for ten years, because the war had not terminated, but also held that the lease was validly renewed for one year, and gave judgment in favor of the landlord accordingly. On appeal to the Appellate Term, the final order of the Municipal Court was modified so as to provide for the payment of emergency rent, the Appellate Term having decided that the lease came to an end on April 15, 1946, on which date the war had not terminated, and that the tenant’s notice of election to renew his lease for ten years was not effectual, either as a ten-year renewal or a renewal for one year.
We are required to decide, primarily, whether the courts below correctly decided that the words “ For the duration of the war ”, as used in the lease, should be read in their legal sense, as referring to a period which continues to and terminates at the time of a formal proclamation of peace, by an authority competent to proclaim it (cf. Hamilton v. Kentucky Distilleries Co., 251 U. S. 146; Hijo v. United States, 194 U. S. 315; Commercial Cable Co. v. Burleson, 255 F. 99; Southwestern Tel. & Tel. Co. v. City of Houston, 256 F. 690; Weisman v. United States, 271 F. 944; Sichofsky v. United States, 277 F. 762; McElrath v. United States, 102 U. S. 426), or whether, as the tenant contends, the words should be given the meaning ordinarily ascribed to them by laymen, and read as referring td a period of time which terminated on the cessation of actual hostilities. (Cf. Matter of Jones v. Schneer, 270 App. Div. 1027; Zinno v. Marsh, 36 N. Y. S. 2d 866; Tuch Foundation v. Hazelcorn, 187 Misc. 954, affd. 188 Misc. 1046 [App. Term, 2d Dept.].)
The question is one of intent. If the parties intended that . their words should be given their proper legal significance, the order appealed from should be affirmed. On the other hand, if by “ After the termination of the war ”, they meant “ after the cessation of actual hostilities ”, effect must be given to that meaning. No evidence was offered on trial as to negotia *112 tions or discussions which would shed' light on the meaning which the parties intended, and we must determine the question on consideration of the instrument itself, the evidence adduced as to the circumstances surrounding its execution, and the purposes which the parties sought to accomplish. (Becker v. Frasse & Co., 255 N. Y. 10; Atwater & Co. v. Panama R. R. Co., 246 N. Y. 519; Gillet v. Bank of America, 160 N. Y. 549.)
The lease provides for cancellation thereof, and of any one •year renewal term, in the event “ that the tenant shall be unable by reason of government restrictions to conduct business in the premises substantially as at present * * *.” We conclude from this provision, and other evidence adduced, that the parties, in providing for the renewal options, had in mind the restrictions imposed upon the sale of gasoline, tires and automobiles, and other governmental regulations, resulting from the exercise of thé war powers vested in the Congress, and in the President, which seriously hampered the conduct of the business for which the premises were leased. Apparently it was their purpose to provide that while the business to be carried on in the premises should be restricted by governmental regulation, the lease could be renewed from year to year, and. that thereafter, when the business should be freed from such regulation, the tenant might exercise his option to renew for ten years, but not for one year. We also conclude that the language adopted to express this purpose was chosen to guard against the possibility that the tenant might be compelled to exercise or abandon his option to renew for the longer' period while his business might still be subject to the restrictions which the parties had in mind. It does riot follow from these conclusions, however, that in providing for an option to be. exercised “After the termination of the war ”, the parties referred to a period commencing on the termination of actual hostilities. Their contract must be construed on consideration of conditions as they existed at the time when it was made, and not in the light of subsequent events. We know now that the cessation of hostilities was followed by the termination of the restrictions which the parties had in mind, but they did not known in 1943, nor could they then have predicted with certainty, that the restrictive war time regulations would not continue after an armistice, and even until the ratification of treaties of peace. The war powers of the President and Congress did not automatically cease upon the termination of actual fighting. “ As the Supreme Court said in Stewart v. *113 Kahn, 11 Wall 493, at p. 507, 20 L. Ed. 176: ‘ (The war power) * * * is not limited to victories in the field and the dispersion of the insurgent forces. It carries with it inherently the power to guard against the immediate renewal of the conflict, and to remedy the evils which have arisen from its rise and progress.’ ” (Samuels v. United Seamen’s Service, 68 F. Supp. 461, 462.) We must assume that the parties or their attorneys realized this, and we may assume that when they prepared their contract they employed words which were best suited to their purpose. They could have provided in express terms that the option to renew for ten years could be exercised upon the termination of the restrictions referred to in the lease. They did not do so. Instead, they agreed that the option might be exercised “ After the termination of the war * * * ”. If they intended, by so wording their agreement, to use these words in their legal sense and so to guard against a temporary relaxation of war time restrictions, or against a possibility that the regulations might be continued after the termination of the fighting until a formal declaration that war had ended, their contract was well expressed. (Cf. Greenwood v. Holbrook, 111 N. Y. 465.) We find no evidence in the record which leads to a conclusion that they had any other intention. In construing contracts, words will usually be given, their ordinary meaning. However,-when words or terms having a definite legal meaning are knowingly used in a written instrument, the parties thereto will be presumed to have intended such words, or terms, to have their proper legal meaning and significance, at least in the absence of any contrary intention appearing in the instrument. (6 R. C. L., Contracts, § 232, p. 844; Von Bremen v. MacMonnies, 200 N. Y. 41; Michaels v. Fishel, 169 N. Y. 381; Propper v. Colson, 86 N. J. Eq. 399.) This presumption is not weakened when we consider that the lease in this ease was prepared by one learned in the law, who undoubtedly knew the legal effect of the language which he employed. Our problem does not involve the meaning of words in a conversation between laymen, but calls for the interpretation of words used in a formal written instrument, the purpose of which was to express the mutual rights and obligations of the parties to it. In construing such instruments, the general rule is that the words shall be given their ordinary legal significance. (Propper v. Colson, supra.) The Municipal Court and the Appellate Term read the words employed in their legal sense, and determined that within the meaning of the *114 contract the war had not terminated at the time when the tenant attempted to exercise his option. In our opinion this determination was correct, and was in accordance with the intent of the parties, as such intent may he gathered from the instrument itself, the evidence adduced as to the circumstances under which the contract was made, and the purposes which the parties sought to accomplish. Our decision in Matter of Jones v. Schneer (270 App. Div. 1027, supra) is not to the contrary. That case involved an expression embodied in a written memorandum indorsed on a lease, providing for a reduction of rent “ For the duration of the war ”. The agreement was between laymen and the memorandum was prepared without the advice of counsel. After a trial at which evidence was adduced bearing on the intent of the parties in using the words employed, the trial court determined that the parties intended that their words should be understood not in a possible legal sense, but in the colloquial or ordinary meaning. That determination had support in the evidence, and was affirmed on appeal to this court. In the present case a contrary conclusion by the trial court is supported by such evidence as is available.
We have considered appellant’s other contentions and are of the opinion that they may not be sustained. The order should be affirmed, with costs.