### *In re* CRESS' ESTATE.

### *In re* DUNBROOK'S ESTATE.

### DEPARTMENT OF REVENUE *v.* MICHIGAN NATIONAL BANK.

1. COURTS—CONSTRUCTION OF STATUTES BY ANOTHER STATE.
   Decisions of another State construing a statute of such State which has been adopted by this State will be considered to have been adopted with the construction so given in the absence of an expression to the contrary.

2. TAXATION—INHERITANCE TAXES—COMPROMISE OF WILL CONTEST.
   An inheritance tax is to be computed by reason of transfer of property by will unaffected by subsequent compromise of contest of such will as the property of the estate passes by reason of the will and at the time of the death of the testator (CL 1948, § 205.201 *et seq.;* § 702.45).

3. SAME—INHERITANCE TAX—DEATH—VALUE OF TAXABLE INTEREST.
   The right of the State to an inheritance tax becomes fixed at the moment of death, although the value of the taxable interest is fixed at a later date (CL 1948, § 205.201 *et seq.*).

4. COSTS—CONSTRUCTION OF STATUTE—INHERITANCE TAXES.
   No costs are allowed in proceeding to determine the basis for computing an inheritance tax, the construction of a statute being involved (CL 1948, § 205.201 *et seq.*).

Appeals from Kent; Verdier (Leonard D.), J. Submitted October 17, 1952. (Docket Nos. 71, 72, Calendar Nos. 45,603, 45,604.) Decided January 5, 1953. Rehearings denied March 10, 1953.

REFERENCES FOR POINTS IN HEADNOTES

[1] 50 Am Jur, Statutes §§ 458–462.

[2] 28 Am Jur, Inheritance, Estate, Succession, and Gift Taxes § 219.

[2] Succession tax as affected by compromise of will contest. 78 ALR 716.

[3] 28 Am Jur, Inheritance, Estate, Succession, and Gift Taxes §§ 218, 224.

[3] Valuation of property for purposes of succession or estate tax. 24 ALR 1041; 57 ALR 1158; 83 ALR 939; 117 ALR 143.

Time as of which value of property is to be computed for purposes of inheritance or succession tax. 13 ALR 127; 86 ALR 1030; 160 ALR 1059.

Time of assessment of succession tax on future contingent interests. 30 ALR 478.

[4] 14 Am Jur, Costs §§ 23, 91.

In the matter of the estates of Oscar C, Cress, deceased, and Augustus Dunbrook, deceased. Inheritance taxes were fixed by probate court on basis of distribution conforming to settlements. On appeal in circuit court the orders were affirmed. Department of Revenue of State of Michigan appeals. Reversed and remanded for computation in accordance with wills.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *T. Carl Holbrook* and *William D. Dexter,* Assistants Attorney General, for plaintiff.

*Schmidt, Smith & Howlett* and *Laurence D. Smith,* for defendants.

*Amicus curiae* on application for rehearing: Detroit Trust Company, executor of the will of Frederick G. Clayton, deceased, by *Moll, Desenberg, Purdy & Glover.*

SHARPE, J. These 2 cases, submitted on separate records, involve the construction of the Michigan inheritance tax law. CL 1948, § 205.201 (Stat Ann 1950 Rev § 7.561). The facts are not in dispute. In the matter of the estate of Oscar C. Cress, deceased, the essential facts are as follows: Oscar C. Cress died on April 21, 1950, a resident of the city of Grand Rapids. He left a will bequeathing the sum of $200 to each of his brothers, Elmer W. Cress and Earl H. Cress. After other specific bequests, the remainder of his estate was devised and bequeathed to Marguerite P. Marshall. The 2 brothers, being dissatisfied with the provisions in the will filed objection to admission of the will to probate. Prior to the probate of the will a settlement was arrived at with the 2 brothers. The settlement provided:

"The undersigned Marguerite P. Marshall is the residuary legatee and devisee named in paragraph 11 of the last will and testament of Oscar C. Cress, deceased, of date March 14, 1950, of which last will and testament the undersigned is the proponent in a petition filed by her in the above named court.

"The Michigan National Bank is the executor named in said last will and testament and is now acting as special administrator of said estate and has also, by permission of said court, intervened as a proponent of said last will and testament.

"Earl H. Cress and Elmer W. Cress, half brothers of said Oscar C. Cress, deceased, have filed in said court their objections to the probate of said will and the contest thus created has not yet been tried.

"The undersigned hereby authorizes said Michigan National Bank to make settlement of said contest by agreement with said contestants, upon the following basis, *viz.:*

"(a) The objections to the probate of said will shall be withdrawn and said will admitted to probate, subject, however, to additional payment to said Earl H. Cress and Elmer W. Cress as set forth in succeeding subparagraph (b).

(b) The bequest in paragraph 7 to said Earl H. Cress shall be increased from $200 to $5,700; and the bequest in paragraph 8 to said Elmer W. Cress shall be increased from $200 to $5,700.

"(c) Such settlement of said estate, however, shall be made by said Michigan National Bank, in behalf of the undersigned only if there is enough property in said estate to pay to the undersigned at least $30,000 in cash, after paying in full all funeral expenses and debts of the decedent, all administration expenses and debts of the decedent, all administration expenses including special administrator's and executor's fees and attorneys' fees, all inheritance and estate taxes, if any, including interest and penalty thereon, if any, and all other bequests made in said

will, including said enlarged bequests of $5,700 each to said Earl H. Cress and Elmer W. Cress.

"(d) In order to make certain that under such settlement at least said net sum of $30,000 will be paid to the undersigned, said Michigan National Bank is authorized to sell all securities in said estate at once, to the extent it has not heretofore done so."

As a consequence of such settlement, the last will and testament of the testator was duly admitted to probate as his last will and testament. The order of the probate court, admitting the testator's will to probate, provided in part as follows:

"It appearing to the court from stipulation on file herein that the differences between said parties have been compromised and settled by agreement between them, which said stipulation and agreement is for the best interests of said estate and the parties interested therein and is hereby approved; and

"It appearing to the court from the testimony of the subscribing witnesses to said instrument that said deceased signed and duly executed said instrument as and for his last will and testament in the presence of sufficient and competent witnesses, and that said witnesses attested and subscribed said instrument as subscribing witnesses thereto at the request of said deceased, in his presence and in the presence of each other, and that said deceased at the time of the execution thereof was of lawful age and sound mind and under no restraint or undue influence; and

"It further appearing that said deceased died on the 21st day of April, 1950, and that at the time of his death was an inhabitant of the city of Grand Rapids in said county, and that said instrument was duly proved and ought to be allowed as the last will and testament of said deceased, subject to the direction as to the bequests to Earl H. Cress and Elmer W. Cress hereinafter mentioned;

"IT IS ORDERED that said instrument be and is hereby allowed and admitted to probate as the last will

and testament of said deceased, subject, however, to the direction and instruction to the executor, pursuant to the stipulation and agreement of the parties, to increase the bequest in paragraph 7 to said Earl H. Cress from $200 to $5,700 and the bequest in paragraph 8 to said Elmer W. Cress from $200 to $5,700.

"IT IS FURTHER ORDERED that the execution of said will be committed, and the administration of the estate of said deceased be granted, pursuant to the directions herein contained, to Michigan National Bank, a national banking association with an office in Grand Rapids, Michigan, said Michigan National Bank to qualify by filing its acceptance of said appointment herein."

On the 17th day of April, 1951, the probate court for the county of Kent determined the inheritance tax on the basis of the transfers made by the decedent to the beneficiaries, in accordance with the provisions of his will, unmodified by the authorization of settlement entered into by Marguerite P. Marshall, Elmer W. Cress and Earl H. Cress. The Michigan National Bank, as executor of the estate, filed a petition for redetermination of the inheritance tax and for a refund of the tax paid, contending that the tax should be computed on the basis of the authorization of settlement, rather than on the basis of the distribution made by the testator in his will. On the 12th day of September, 1951, the probate court for the county of Kent issued an order allowing the petition and provided for the computation of inheritance tax based upon distribution of $5,700 to each of the contestants and providing that the residue of the estate, for inheritance tax purposes, be reduced by the sum of $11,000. The department of revenue of the State of Michigan appealed to the circuit court for the county of Kent from the order of redetermination of inheritance tax. The circuit

court for the county of Kent affirmed the order of, the probate court.

In the matter of the estate of Augustus Dunbrook, deceased, the facts are as follows: Augustus Dunbrook, died a resident of Kent county. He left a will dated March 12, 1942. The will contained the following provisions:

"(1) $500 shall be paid to my son, Raymond Dunbrook. In this connection I wish to state that the amount that my said son shall obtain from my estate is limited to this amount for the reason that I have heretofore given my said son his share of my said estate.

"(2) All of the remainder of my estate, real, personal and mixed, and wherever located, shall be paid to the Evangelical Lutheran Synod of Missouri, Ohio, and other States, whose principal office is now at 3558 South Jefferson avenue, St. Louis, Missouri, to be used by such Synod for missions."

Raymond F. Dunbrook, being dissatisfied with the $500 given him under the will, threatened to commence suit to contest the validity of the will. As a result of this threat, Raymond F. Dunbrook, Emma Dunbrook and the Evangelical Lutheran Synod, entered into a settlement agreement on April 5, 1951, and pursuant to such agreement Raymond F. Dunbrook was to receive $13,000. The agreement also provided that any increase or decrease in the value of the securities should accrue to Raymond F. Dunbrook. On the above date the judge of probate entered an order approving the agreement. On September 12, 1951, the probate court issued an order requiring that the inheritance tax be determined on a basis of a transfer by the decedent to Raymond F. Dunbrook, rather than as a transfer to the residuary, legatee under the decedent's will.

Plaintiff appealed to the circuit court from the above order. The circuit court affirmed the order of the judge of probate and in an opinion stated:

"In each case the probate court determined the inheritance tax on the basis of the actual distribution of the estate in accordance with the compromise agreement.

"In each case the Michigan department of revenue has appealed from that determination to this court, claiming that the tax should have been computed as though the estate had been distributed in accordance with the terms of the will.

"There is a split of authority on the question and apparently our Supreme Court has not as yet been called upon to pass on the question. Several States assess the tax on the basis of the will as written, upon the theory that title vests at the date of the testator's death, that the tax accrues as of that date and that nothing subsequent thereto can reduce the tax liability.

"While it must be acknowledged that there is ample authority in support of this theory, I am unable to convince myself that it is a doctrine that should be followed in Michigan for the reason that it rests on fiction and not on fact.

"It is based on the fiction that if the will gives to a beneficiary something of which he surrenders a part, he should be taxed just the same as if he received it, because he voluntarily parted with something he could have had. That is untrue. A will has no force or effect until it has been probated and a beneficiary cannot part with anything that does not become his until he has succeeded in overcoming objections to probate. Furthermore, such a doctrine fails to recognize the settlement of a good-faith controversy by agreement between the interested parties, a procedure so favored that Michigan has seen fit to pass a special statute to authorize it.

"Last but not least, such a doctrine imposes a tax on a part of the inheritance that the beneficiary never

receives, which to me appears so inequitable and unjust as never to have been intended as a part of the inheritance tax law. That statute is aimed to tax the 'transfer' of property from the deceased to the legatee. To the extent that the legatee has not received a bequest it cannot have been transferred to him."

The sole question at issue is whether or not a compromise agreement entered into by parties competent to contract alters the inheritance tax consequences, that otherwise would result by distribution under a decedent's last will and testament. This question is one of first impression for our Court to determine and calls for the construction of CL 1948, § 205.201 et seq. (Stat Ann 1950 Rev § 7.561 et seq.), the applicable provisions of which are as follows:

"Sec. 1. That after the passage of this act a tax shall be and is hereby imposed upon the transfer of any property, real or personal, of the value of $100 or over, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations, not exempt by law in this State from taxation on real or personal property in the following cases:

"First, When the transfer is by will or by the intestate laws of this State from any person dying seized or possessed of the property while a resident of this State."

CL 1948, § 205.203 (Stat Ann 1950 Rev § 7.564):

"Sec. 3. Every such tax and the interest thereon herein provided for shall be and remain a lien upon the property transferred until paid, and the person to whom the property is so transferred and the administrator, executor, and trustee of every estate so transferred, shall be personally liable for such tax until its payment; * * *

"All taxes imposed by this act shall accrue and be due and payable at the time of transfer, which is the date of death; Provided, however, That taxes

upon the transfer of any estate, property or interest therein limited, conditioned, dependent or determinable upon the happening of any contingency or future event by reason of which the clear market value thereof cannot be ascertained at the time of the transfer as herein provided, shall accrue and become due and payable when the persons or corporations beneficially entitled thereto shall come into actual possession or enjoyment thereof."

It is apparent that the authorities are not unanimous upon this question. In 78 ALR 716, it is stated:

"By one line of authorities it is held that, where there has been a compromise of a will contest, all of the property passes by virtue of the will, and that the succession tax is computable upon such property, unaffected by the compromise agreement. * * *

"On the other hand in some jurisdictions, where there has been a contest of a will, and a compromise agreement has been entered into, the agreement has been held controlling, and the succession tax has been held to be payable on what was paid or received under the terms of that agreement." (And cases cited.)

See, also, 28 Am Jur, pp 112, 113.

The view that a compromise agreement does not affect the rates of taxation is expressed in *Re Cook's Estate*, 187 NY 253 (79 NE 991).

In that case the testator's widow was contesting the will. An agreement was entered into with the residuary legatees whereby certain interests in the estate were transferred to the widow.

The court there said:

"The compromise did not change the will. No settlement could change a word that the testator wrote. The will stands as it was written, and the most solemn instrument, executed by all parties interested, could not convert a bequest to the nephews and nieces into a bequest to the widow. As we said in another case, she takes under them 'by contract, not under

the will or from the testator.' (*Greenwood* v. *Holbrook,* 111 NY 465, 471 [18 NE 711].) A succession tax is measured by the legal relation which the legatee bears to the testator and is not affected by the relation which an assignee of the legatee bears to him. Here the legatees took the residuum under the will. They succeeded the testator in the ownership thereof and their succession gives rise to the tax. The widow did not take the residue from the testator, for he did not give it to her. She took as assignee, not as legatee. Unless she took as assignee, she did not take at all. The legatees assigned to her and the rate of taxation is fixed by their relation to the testator. As she did not take through the will, the succession tax cannot be fixed at the rate of 1%, as in the case of a bequest to a widow, but must be fixed at the rate of 5%, as in the case of a bequest to nephews and nieces."

In *Baxter* v. *Treasurer and Receiver General,* 209 Mass 459 (95 NE 854), a similar ruling was made. In that case:

"Helen F. Baxter, a single woman, died in October, 1909, leaving a will giving practically all her property to her nephews Carlton W. Baxter and Lawrence M. Baxter. Florence I. Neale, a sister of the testator and an heir at law, contested the probate of the will, and finally an agreement of compromise was made by which the sister was to have one half of the estate and the 2 nephews were to have each a quarter. * * *

"The present case raises the general question whether the amount of a tax assessed under this statute shall be determined in accordance with the provisions of a will as written, or in accordance with the result of the will and compromise agreement made by the parties and approved by the court."

The court there said:

"Under this statute the court does not undertake to admit to probate a part of the will and refuse

probate as to another part. The whole will is admitted, but the concessions made by the legatees to the heirs at law or to each other are at the same time noted and made binding upon the parties. But these concessions take effect not because such is the will but because such is the agreement, and whoever takes anything or loses anything by such concessions or changes takes or loses, as the case may be, under the agreement and not under the will. While it is sometimes said that the whole decree works a modification of the will, yet that effect is not due to any change in the provisions of the will, as such, but to the concessions made by the legatees to the heirs at law or among themselves as to what disposition shall be made of various interests granted to them in the will. * * *

"It is important that in the assessment of this tax there should be a plain, simple rule. The property upon which the tax is to be assessed is that which passes by will or by the laws regulating intestate succession. When there is a will, whether or not it disposes of the whole estate of the testator, whatever does pass by it passes to the legatees therein named, and by force of the will passes to no other person."

The following States are in general accord with the views above expressed: *MacKenzie* v. *Wright,* 31 Ariz 272 (252 P 521); *Estate of Rossi,* 169 Cal 148 (146 P 430); *Estate of Graves,* 242 Ill 212 (89 NE 978); *Indiana Department of State Revenue* v. *Kitchin,* 119 Ind App 422 (86 NE2d 96); *Estate of Wells,* 142 Iowa 255 (120 NW 713); *In re O'Neill's Estate,* 111 NJ Eq 378 (162 A 425); *Estate of Burtman,* 95 NH 383 (63 A2d 798); *Estate of McGreevey,* Ohio, 32 NP NS 212; *Estate of Johnston,* 186 Wis 599 (203 NW 376).

The view that the inheritance tax should be computed in accordance with the actual distribution to legatees made pursuant to the court approval agree-

ment is well stated in *Re Kierstead's Estate,* 122 Neb 694 (241 NW 274). It was there said:

"The third viewpoint is that the compromise payment is to be taxed as a devolution of property by death to the contestant if an heir at law. The portion transferred is considered as having been renounced by the legatee, as passing directly from the estate to the one who receives it, and that the will is inoperative to that extent. This position seems preferable to either of the other 2, since the tax is intended to reach property acquired by virtue of some relation to a decedent. * * *

"A beneficiary in this will might refuse to accept the portion given. Certainly if he refused to accept the gift, no tax could be collected with respect to him, because there has been no transfer to him. The right to renounce the privilege of accepting the legacy is neither denied nor forbidden by the statutes or any authorities which we have been able to find. Upon his effective renunciation the title to or ownership of the property making up the legacy remains in the estate to be disposed of under the terms of the will or under the intestate law of the State and is taxable in accordance with the nature of the ultimate devolution. Logically, it would seem to follow that, if a beneficiary may renounce the whole legacy, he may renounce a part, and the part so renounced is not subject to the tax as property transferred to him by the will. When a will contest has been amicably settled between the beneficiaries named in the will and the heirs at law and they have in good faith stipulated for a decree of distribution in accordance with the settlement and there is no intent thereby to evade or reduce the inheritance tax, the tax should be computed upon the portion received by each beneficiary under the decree.

"This court adopts this theory which justly places the burden imposed by statute upon those who actually receive the money or property, encourages the settlement of litigation, is for the best interests of

society, and preserves property otherwise dissipated in payment of fees and court costs for another generation, thus ultimately providing more revenue for the State of Nebraska."

See, also, *In re Pepper's Estate,* 159 Pa 508 (28 A 353).

*In re Thorson's Estate,* 150 Minn 464 (185 NW 508), it is said:

"It is immaterial whether the legatees by the compromise agreement receive more or less than that given by the will; the amount actually received will measure their liability for the inheritance tax. The legatee who yields up a portion of his legacy in consideration of the settlement and to avoid litigation must be deemed as renouncing his legacy to the extent shown by the settlement, leaving the amount thereof a part of the estate, and those who receive it, whether by formal decree of the court or by settlement standing alone, should pay the tax thereon. The legatee who thus renounces a part of his legacy, when not exempt, to effect a settlement of a bona fide controversy, should not be penalized therefor by being compelled to pay a tax on what he so in effect turns back to the estate."

In Colorado the question arose in *People, ex rel. Attorney General,* v. *Rice,* 40 Colo 508 (91 P 33). Testator died bequeathing his entire estate to his executors in trust. The will was contested by testator's son. A settlement was made by which the son received an additional $300,000. The court held that the sum paid to the son was subject to the tax:

"The money was paid to him because he was the son of Stratton (testator) and it makes no difference that he accepted less than the statute would give him. He took all he did take in excess of his legacy by virtue of his heirship, and whatever he took, whether under the will or otherwise, is subject to an inheritance tax."

See, also, *Taylor* v. *State,* 40 Ga App 295 (149 SE 321).

While the case at bar is one of first impression for our Court, the attorney generals of our State as far back as 1902 have held to the view that the tax attaches at the instant of transfer, which is the time of death.

In a well-reasoned opinion, Attorney General Oren in 1902 advised (Opinions Attorney General 1903, p 74):

"Under the Michigan law the transfer of property by the death of a decedent takes place upon the death, and not upon the distribution. It is true, where the transfer takes place pursuant to a will, the will must be probated before the devisee or legatee is entitled to the full enjoyment of the transfer; but when the will is once probated, the probate, for all purposes relating to the existence and transfer of the title, relates back to the death of testator. * * *

"The devolution of the property and the right of the State have their origin at the same moment of time. The ascertainment of the value of the taxable interest and the fixing of the tax necessarily takes place subsequent to the death. But the guide is the value at the time of the death, when the interests were acquired."

We note that our inheritance tax law was copied from the New York act, see *Stellwagen* v. *Wayne Probate Judge,* 130 Mich 166. The weight to be given New York State decisions is well stated in *Re Rackham's Estate,* 329 Mich 493, 504:

"The mere fact that the Michigan inheritance tax law was adopted from the statute law of New York does not necessarily require that decision in this Court be controlled by the prior construction placed upon the statute law of New York by its courts. However, such decisions are of importance and must be given weight in construing the statute law in this

State. In the absence of an expression to the contrary, the legislature in passing the statute in this State will be considered to have adopted it with the construction so given."

See, also, *In re Atherton's Estate,* 333 Mich 193.

In the case at bar, the tax is computed by reason of transfer of property by will. The compromise agreement does not change the fact that the entire property in the estate passes by reason of the will, and at the time of the death of testator. The right of the State becomes fixed at the moment of death, although the value of the taxable interest is fixed at a later date, nor does the so-called Dodge act, CL 1948, § 702.45 (Stat Ann 1943 Rev § 27.3178[115]), encouraging the settlement of will contests and other contests over the distribution of a decedent's estate change or modify our inheritance tax laws. It follows that the orders of the circuit court, affirming the orders of the probate court, are reversed and the causes remanded to the circuit court (for remand to the probate court) for the imposition of the tax on the basis of the distributions provided in the last wills and testaments of Cress and Dunbrook. No costs, as the construction of a statute is involved.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSHNELL, BOYLES, and REID, JJ., concurred.